**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. _____

MATTHEW BUCKLEY and
TOP GUN OPTIONS, LLC,

      Plaintiffs,

         v.

EMMETT MOORE and
TRADINGSCHOOLS.ORG,

      Defendants.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs MATTHEW BUCKLEY ("Mr. Buckley") and TOP GUN OPTIONS, LLC

("Top Gun Options" and together with Mr. Buckley, "Plaintiffs"), by and through undersigned

counsel, files this Complaint for Injunctive Relief and Damages against Defendants EMMETT

MOORE ("Mr. Moore") and TRADINGSCHOOLS.ORG ("TradingSchools.org" and together

with Mr. Moore, "Defendants"), and in support states as follows:

### NATURE OF THE ACTION

1.      This is an action against Defendants based on (1) Defendants' deceptive and

unfair trade practices; (2) Defendants' tortious interference with Plaintiffs' prospective economic

advantage; (3) defamation *per se*; and (4) product disparagement and trade libel.

2.      By this action, Mr. Buckley and Top Gun Options (collectively, "Plaintiffs") seek

compensatory damages, punitive damages, injunctive relief, attorneys' fees and costs, and all

other relief to which they may be entitled as a matter of law.

**PARTIES**

3.      Mr. Buckley is and at all times relevant to the allegations in the complaint was a citizen of the State of Florida and a resident of Boca Raton, Florida.

4.      Top Gun Options is a Florida limited liability company with its principal place of business in Boca Raton, Florida.

5.      Mr. Moore is an individual residing in Encinitas, California and a citizen of the State of California.

6.      Tradingschools.org is a company with its principal place of business in San Diego County, California.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over the subject matter of the Plaintiffs' claims pursuant to 28 U.S.C. § 1332 as (a) the Plaintiffs, on the one hand, and the Defendants, on the other hand, are citizens of different states; and (b) the amount in controversy exceeds $75,000.

8.      This court may exercise personal jurisdiction over the Defendants and venue is proper in this District, Mr. Buckley resides in, Top Gun Options has its principal place of business in, and a substantial part of the causes of action herein accrued in Broward County, Florida, which is within this judicial district.

9.      Because Defendants directed conduct toward the Plaintiffs into this jurisdiction and this District sufficient for this Court to exercise specific personal jurisdiction over them.

10.      The Defendants knew that Top Gun Options operates its business from and within the State of Florida.

11.      The Defendants knew that Mr. Buckley is a citizen of the State of Florida.

12.     Indeed, the Defendants state that Top Gun Options "is an options trading educational company owned and operated by Matthew 'Whiz' Buckley, operating out of Florida."

13.     Indeed, the Defendants directed their conduct toward Top Gun Options in Florida by publishing a "blog" and encouraging public comments on the Internet attacking Top Gun Options' business operations.

14.     Further, the Defendants directed their conduct toward Mr. Buckley in Florida by publishing a "blog" and encouraging public comments on the Internet attacking Mr. Buckley personally. As such, the Defendants posted statements concerning the Plaintiffs specifically directed toward them in Florida.

15.     By publishing the blogs on the Internet accessible to anyone, the Defendants directed the statements to Florida residents.

16.     By publishing the blogs on the Internet accessible to anyone, the Defendants directed the statements to individuals who would seek information about and consider using the Plaintiffs who operated in Florida.

17.     Additionally, as alleged more fully below, the Defendants contacted the Plaintiffs in Florida prior to the publication of the content demanding payment of money.

18.     Further, the reputational harm arising from people reading the Defendants' blog and comments published thereon caused damages to the Plaintiffs' business in Florida.

19.     The Defendants acted intentionally and/or maliciously.

20.     The Defendants' intentional conduct has harmed the Plaintiffs.

21.     The Plaintiffs have been injured by the Defendants' conduct and have suffered damages resulting therefrom in an amount greater than $75,000.

## FACTUAL ALLEGATIONS

**A.  *Background on the Plaintiffs***

22.     Mr. Buckley is a decorated former Navy fighter pilot who graduated from Navy Fighter Weapons School and flew 44 combat missions over Iraq.

23.     After leaving the Navy, Mr. Buckley developed a strategy in trading options based on skills and insight he learned in the military.

24.     Mr. Buckley founded Top Gun Options to share his knowledge of options trading with the public.

25.     Through Top Gun Options, Mr. Buckley teaches options trading to traders of all experience levels.

26.     Top Gun Options is not an investment advisory service.

27.     Top Gun Options is not a registered investment advisor.

28.     Top Gun Options is not a broker-dealer.

29.     Top Gun Options uses paper trading as a tool to educate clients about options trading.

30.     Indeed, Top Gun offers its services for training and informational purposes only.

31.     Top Gun Options advises its potential and existing customers that its services are for training and informational purposes only.

32.     Additionally, Top Gun Options advises its potential and existing customers to not trade with money they cannot afford to lose.

33.     Further, Top Gun Options advises its potential and existing customers to make all trades while training in a Top Gun Options program in a paper trading account.

34.     Top Gun Options has expended a significant amount of time and money building its reputation in the financial sector.

35.     Top Gun Options has since developed a strong positive reputation in the financial sector.

36.     Mr. Buckley regularly speaks on business leadership, business execution, and risk management.

37.     The Wall Street Journal, Fox News, and CNBC have used Mr. Buckley as a source.

38.     Additionally, Mr. Buckley is a contributing writer for financial websites seekingalpha.com and thestreet.com.

39.     Throughout his post-military career, Mr. Buckley has worked in top executive level positions for various companies.

40.     In addition to Top Gun Options, Mr. Buckley founded Strike Fighter Financial LLC.

41.     Previously, Mr. Buckley worked as the former managing director of strategy for the volatility arbitrage options trading firm PEAK6 Investments.

42.     Additionally, Mr. Buckley was the founder of and CEO of PEAK6 Media LLC, the parent company of ONN.TV (The Options News Network).

43.     Mr. Buckley has developed a strong positive reputation in the financial sector.

44.     Additionally, Mr. Buckley engages in charity work.

**B.  *Background on the Defendants***

45.     Mr. Moore founded TradingSchools.org in 2013.

46.     Mr. Moore represents TradingSchools.org as a "blog about trading products."

47.     Indeed, Tradingschools.org contains a webpage at the url

https://www.tradingschools.org/about-trading-schools-org describing it ("About Page").

48.     On the About Page, TradingSchools.org states that it provides "honest reviews

about all sorts of investment products."

49.     Further, TradingSchools.org claims that:

We write about trading educators, newsletter providers, trading software, live
trading rooms, brokers, etc.

We dig up the dirt and relentlessly search for the truth.

We have nothing to sell. The entire site runs on income from Google Adsense
advertising. We won't write fake reviews about fraudulent products hoping to make
a quick affiliate commission.

50.     Further, TradingSchools.org claims that:

We are not here to hurt anyone. If we write a negative review, this is because we
genuinely feel that the product is poor. And we will gladly rewrite any negative
review if the vendor makes positive and reasonable changes that bring value to the
consumer.

51.     The public relies on the Defendants' representations when deciding which trading

schools to patronize.

52.     Yet, many of the Defendants statements about their operations are false.

53.     The Defendants do not publish honest reviews.

54.     The Defendants do not search for the truth.

55.     The Defendants do write fake reviews.

56.     The Defendants made additional false statements about their operations and intent

in writing articles.

57.     The Defendants' website does not run solely on income from advertising.

58.     Indeed, the Defendants demand money from people and businesses in exchange

for Defendants refraining from publishing content about people and businesses.

**C.** *Demand for Money*

59.     In 2017, Mr. Moore contacted Mr. Buckley.

60.     Mr. Moore indicated that he intended to write an article about Top Gun Options and Mr. Buckley for TradingSchools.org.

61.     Mr. Buckley understood from Mr. Moore that Defendants intended to publish a false and misleading article about Plaintiffs.

62.     Mr. Moore demanded that Mr. Buckley pay Mr. Moore $1,800.00 in exchange for *not* writing the article about Top Gun Options.

63.     Mr. Moore warned Mr. Buckley that Mr. Moore and TradingSchools.org will "nail" Top Gun Options and Mr. Buckley unless Mr. Buckley paid Mr. Moore $1,800.00.

64.     By threatening to "nail" Top Gun Options, Mr. Moore threatened to injure Top Gun Options.

65.     By threatening to "nail" Top Gun Options, Mr. Moore threatened to injure Mr. Buckley.

66.     By demanding $1,800.00 from Mr. Buckley, Mr. Moore intended to compel Mr. Buckley to pay Mr. Moore $1,800.00 against Mr. Buckley's will.

67.     Mr. Buckley refused to pay the money to Mr. Moore.

68.     In response to the Plaintiffs' failure to pay the Defendants money, the Defendants proceeded to publish false content about the Plaintiffs on TradingSchools.org.

69.     As Defendants demanded money in exchange for refraining from publishing content about Plaintiffs, the statement on their About Page where they claim to publish "honest reviews about all sorts of investment products" is demonstrably false.

70.     Indeed, the Defendants falsely represent TradingSchools.org as a legitimate source of unbiased reviews.

71.     The Defendants also do not relentlessly search for the truth.

72.     The Defendants do not write negative reviews because they believe a product to be poor.

73.     The Defendants have demanded money from other third parties to avoid publication of false and negative content.

74.     The Defendants have published false content about others.

**D.** *Additional Deceptive Conduct*

75.     In 2017, Mr. Moore also sent Mr. Buckley a series of emails under an alias that masked Mr. Moore's true identity ("False Alias Emails").

76.     Through these False Alias Emails, Mr. Moore represented himself as an individual interested in learning how to profit from options trading.

77.     Indeed, Mr. Moore used the False Alias Emails to represent himself to Mr. Buckley as an individual with little financial investment knowledge, "too much money, and too little sense."

78.     Mr. Moore later boasted of his False Alias Emails writing that "several emails were sent from an alias email address, where we portrayed ourselves as 'someone looking to learn and profit just like the supposed performance figures gleefully proclaim.'"

79.     Mr. Moore has a history of using fictitious names to hide his identity.

**F.** *Defendants' False Statements and Accusations of Criminality About The Plaintiffs*

80.     On June 8, 2017, Mr. Moore and TradingSchools.org wrote and published a "review" of Top Gun Options titled "*Top Gun Options: A Paper Tiger?*"

81.     The Defendants sought and received comments on the review.  (The review and comments shall be referred to collectively as the "Top Gun Article.")

82.     In the Top Gun Article, the Defendants falsely discuss the options trading program offered by the Plaintiffs.

83.     The Top Gun Article falsely accuses the Plaintiffs of engaging in criminal activity by falsely reporting trading history.

84.     Unlike Defendant Moore who readily admits his criminal background related to securities, the Plaintiffs have not engaged in criminal activity.

85.     The Plaintiffs do not falsely report trading activity.

86.     The Defendants falsely state that Mr. Buckley only practices "paper trading" and "is only willing to trade on a simulator."

87.     While the trading school only uses paper trading, Mr. Buckley has extensive experience trading.

88.     Additionally, the Defendants state in the Top Gun Article that Mr. Buckley's "fundamental argument" is that "being a fighter pilot uniquely qualifies him to be an expert at making money in the stock market."

89.     This is not true.

90.     Additionally, the Defendants state in the Top Gun Article that "With Mr. Buckley, as impressive his resume exudes [sic], **simply cannot or is unwilling to prove any of claims of success**" (emphasis in original).

91.     This is not true.

92.     Additionally, the Defendants state in the Top Gun Article that Mr. Buckley showed a "high level of callousness and disdain for" a customer who sought a refund, and that "[t]o hustle a client over a technicality shows a lack of integrity."

93.     This is not true.

94.     Additionally, the Defendants state in the Top Gun Article that Mr. Buckley "advocated the murdering of journalists, that US citizens should be summarily shot by firing squad, and anyone not agreeing with his narrow worldview should "get the fuck out."

95.     This is not true.

96.     The Defendants invite the public to comment on the substance of the review and write, "Thanks for Reading. And of course, I would love to know your opinion."

97.     A comment published by an author identified as Mark on September 25, 2017 states that "if you fall for this con man, go monthly so you can escape when you regain your senses." ("Mark September 25, 2017 Comment").

98.     The Plaintiffs are not con men.

99.     Mr. Moore authored the Mark September 25, 2017 Comment.

100.    If Mr. Moore did not author the Mark September 25, 2017 Comment, he encouraged and solicited its authorship.

101.    Regardless, Mr. Moore published the Mark September 25, 2017 Comment.

102.    A comment published by an author identified as Mark on December 25, 2017 states "Like many con men, sociopaths with no capacity for remorse, [Mr. Buckley] continues to talk trash without adjustment." ("Mark December 25, 2017 Comment").

103.    Again, the Plaintiffs are not con men.

104.    Mr. Moore authored the Mark December 25, 2017 Comment.

105.    If Mr. Moore did not author the Mark December 25, 2017 Comment, he encouraged and solicited its authorship.

106.    Regardless, Mr. Moore published the Mark December 25, 2017 Comment.

107.    A comment published by an author identified as "Mark" on May 23, 2018, states that "Buckley will ride this con into the dirt, I'm sure" ("Mark Comment").

108.    Again, the Plaintiffs are not con men.

109.    Additionally, the Mark Comment suggests the Plaintiffs misrepresent their success by stating that "Keep in mind, if any of the quoted states, like up 48% this year, were true, Buckley would post the detailed transaction logs to demonstrate his greatness."

110.    Mr. Moore authored the Mark Comment.

111.    If Mr. Moore did not author the Mark Comment, he encouraged and solicited its authorship.

112.    Regardless, Mr. Moore published the Mark Comment.

113.    A comment published by an author identified as Sam on September 17, 2019, states "Top Gun options is a sham." ("Sam Comment").

114.    Top Gun Options is not a sham.

115.    Mr. Moore authored the Sam Comment.

116.    If Mr. Moore did not author the Sam Comment, he encouraged and solicited its authorship.

117.    Regardless, Mr. Moore published the Sam Comment.

118.    A comment published by an author identified as "Olio" on October 12, 2018 states "Buyer beware" and falsely suggests the Plaintiffs misrepresent the nature of their business ("Olio Comment").

119.    The Plaintiffs do not misrepresent the nature of their business.

120.    Mr. Moore authored the Olio Comment.

121.    If Mr. Moore did not author the Olio Comment, he encouraged and solicited its authorship.

122.    Regardless, Mr. Moore published the Olio Comment.

123.    A comment published by an author identified as "Jim" on February 15, 2020, states, "1000% incontrovertibly agree with the scammer comments here" ("Jim Comment").

124.    Additionally, the Jim Comment states, "No information or posting on losers but I'm sure I would be denied any type of honest, accurate, past performance without manipulation or hassle."

125.    The Jim Comment consistently suggests that the Plaintiffs convey false and/or misleading information.

126.    The Jim Comment characterizes statements by the Plaintiffs as "a red flag."

127.    Additionally, the Jim Comment states that Mr. Buckley's proprietary trading strategy "falls under mainly a fundamental view of trading with little to no consideration on technical analysis or other methodologies for a well-rounded, objective by analytical perspective."

128.    The Jim Comment's statements are false.

129.    Mr. Moore authored the Jim Comment.

130.    If Mr. Moore did not author the Jim Comment, he encouraged and solicited its authorship.

131.    Regardless, Mr. Moore published the Jim Comment.

132.    As recent as May 15, 2020, two additional comments have been published on the Top Gun Article.

133.    A comment by Tuddy alleges that the Plaintiffs convey false information through explaining why they utilize simulated and paper trading ("Tuddy Comment").

134.    The Plaintiffs do not convey false information.

135.    Mr. Moore also further responds to some of the comments by posting additional content in response to specific points he wants to emphasize.

136.    Mr. Moore continues to post content to the Top Gun Article.

137.    Specifically, Mr. Moore posted new content under his own name in response to the comments published on, among other dates, September 3, 2018 and January 29, 2019.

138.    The foregoing false statements shall be collectively referred to as the "False and Defamatory Statements."

## G. *Public Perception*

139.    The false statements identified above convey a false meaning about the Plaintiffs that they engage in criminal activity.

140.    Since reading the publication of the Top Gun Article, any individual reading it might believe that the Plaintiffs are engaged in criminal activity.

141.    Since the publication of the Top Gun Article, any individual reading it might believe the Plaintiffs engage in questionable and unethical marketing practices.

142. Since the publication of the Top Gun Article, any individual reading it might believe that the Plaintiffs lack integrity.

143. Since the publication of the Top Gun Article, any individual reading it might believe the Plaintiffs do not offer a quality trading program.

144. Since its publication, any individual reading the Top Gun Article might obtain a significant misunderstanding of the value a trader gets in exchange for the cost of participating in the Top Gun Options educational course.

145. Since the publication of the Top Gun Article, any individual reading it might believe that Mr. Buckley advocates for the murder of journalists.

146. Since the publication of the Top Gun Article, any individual reading it might believe that Mr. Buckley advocates for the murder of those with whom he disagrees politically.

147. Potential customers of the Plaintiffs have become aware of and read the Top Gun Article.

148. As a result of the Defendants' misrepresentations, members of the public believe false information published by the Defendants about Top Gun Options causing Top Gun Options to suffer damages including, but not limited to, harmed reputation, loss of goodwill, loss of prospective business, and other harm not fully realized.

## H. *Intent*

149. The Defendants intentionally and/or maliciously engaged in the foregoing conduct.

150. The Defendants intended to harm the Plaintiffs.

151.     The foregoing wrongful conduct engaged in by the Defendants shall hereinafter be referred to as the "Wrongful Conduct."

**COUNT I**
**VIOLATION OF FLORIDA'S**
**DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**FLORIDA STATUTE § 501.201,** *et. seq.*

152.     The Plaintiffs hereby adopt and incorporate and re-allege Paragraphs 1 through 151 as if fully set forth herein.

153.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes §§ 501.201 to 501.213.

154.     The express purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2).

155.     Plaintiffs are "consumer[s]" as defined by § 501.203.

156.     Defendants are engaged in trade or commerce within the meaning of FDUTPA.

157.     Section 501.204(1) declares as unlawful "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

158.     Defendant has violated FDUTPA by engaging in the Wrongful Conduct detailed above, which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

159.     Specifically, Defendants threatened to harm Top Gun Options by publishing deceptive, false, and misleading statements online unless they were paid $1,800.00.

160.     When Plaintiffs refused to pay $1,800.00 to Defendants, Defendants knowingly published said false and misleading statements–the Top Gun Article–on the TradingSchools.org

blog, which statements were all designed to deter consumers acting reasonably from associating and doing business with the Plaintiffs.

161.   Defendants' publication of the Top Gun Article did in fact deter reasonable consumers from associating and doing business with the Plaintiffs.

162.   Plaintiffs have been aggrieved by Defendants' unfair and deceptive practices in violation of FDUTPA, in that consumers visited Defendants' TradingSchools.org blog and reviewed Defendants' Top Gun Article, which caused those consumers to refuse to do business or to continue to do business with Plaintiffs.

163.   Consumers acting reasonably have been aggrieved by Defendants' unfair and deceptive practices in violation of FDUTPA, in that they visited Defendants' blog and reviewed the Top Gun Article, which caused them to refuse to do business or to continue to do business with Plaintiffs.

164.   By engaging in the Wrongful Conduct, Defendants engaged in unlawful acts and practices in violation of Florida law.

165.   Plaintiffs suffered damages and are entitled to injunctive relief.

166.   Pursuant to §§ 501.211(2) and 501.2105, Plaintiffs make claims for damages, attorneys' fees, and costs. The damages Plaintiffs suffered were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendants. Additionally, pursuant to § 501.211(1), Plaintiffs seek injunctive relief for, *inter alia*, the Court to enjoin Defendants' above-described Wrongful Conduct, and all wrongful acts and practices, and for restitution and disgorgement.

167.   Plaintiffs seek all available remedies, damages, and awards as a result of Defendants' violations of FDUTPA.

## COUNT II
## TORTIOUS INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE

168.    The Plaintiffs hereby adopt and incorporate and re-allege Paragraphs 1 through 151 as if fully set forth herein.

169.    The Plaintiffs held a reasonable expectancy of entering into valid business relationships with individuals.

170.    The Defendants had knowledge of the Plaintiffs' expectancy of entering into valid business relationships.

171.    The Plaintiffs published the Top Gun Article and its false statements to harm the Plaintiffs.

172.    The Defendants expressly intended to direct individuals away from doing business with the Plaintiffs through the publication of the Top Gun Article on the Internet.

173.    The Defendants published the Top Gun Article with the reasonable expectation that individuals who read the TradingSchools.org blog and, specifically, the Top Gun Article would not choose the Plaintiffs' services.

174.    Indeed, the Top Gun Article identified both Top Gun Options and Mr. Buckley by name.

175.    The publication of the Top Gun Article constitutes an intentional and unjustifiable interference with prospective clients and customers of the Plaintiffs.

176.    The publication of the Top Gun Article caused and continues to cause prospective clients and consumers to refrain from contracting and/or doing business with the Plaintiffs.

177.     As a direct result of the Defendants' conduct and the publication of the Top Gun Article, the Plaintiffs have suffered and continue to suffer damages, including, but not limited to, loss of prospective business from prospective clients and customers.

## COUNT III
## DEFAMATION *PER SE*

178.     The Plaintiffs hereby adopt and incorporate and re-allege Paragraphs 1 through 151 as if fully set forth herein.

179.     The Defendants represented the Top Gun Article as containing statements of fact regarding the Plaintiffs.

180.     Yet, the Top Gun Article contains the publication of false and defamatory statements of fact by the Defendants about the Plaintiffs.

181.     The Top Gun Article contains False and Defamatory Statements that impute criminal conduct.

182.     Specifically, the Top Gun Article contains statements falsely claiming that the Plaintiffs misreported trades.

183.     Specifically, the Top Gun Article contains statements falsely claiming that the Plaintiffs misrepresented the nature of their products and services.

184.     The Plaintiffs do not engage in criminal conduct, have not misrepresented trades, and have not misrepresented the nature of their products or services.

185.     Additionally, the Top Gun Article also imputed criminal conduct by and through statements contending that Mr. Buckley encouraged criminal behavior through inciting violence against journalists and United States citizens.

186.     Mr. Buckley never engaged in such conduct.

187.    Through the False and Defamatory Statements, the Top Gun Article falsely portrays the Plaintiffs as lacking integrity in the exercise of their business and profession.

188.    Indeed, the Top Gun Article falsely describes the Plaintiffs as a con, scam, and sham.

189.    In fact, the Defendants represented that the Plaintiffs exhibited a "lack of integrity."

190.    The Plaintiffs do not lack integrity in the exercise of their business or profession.

191.    The Plaintiffs do not operate a con, scam, or sham.

192.    The Top Gun Article, both in the review and the comments, contend that the Plaintiffs misrepresent the nature of their business and their success.

193.    The Plaintiffs do not misrepresent the nature of their business and their success.

194.    Through the False and Defamatory Statements, the Top Gun Article prejudices the Plaintiffs in their business and profession.

195.    Beyond that stated above, the Dan Comment warns the public to be "Buyer beware" and suggests the Plaintiffs will take your money and blow up your account despite the Plaintiffs making very clear their training mechanisms and methods use paper trades to protect those learning.

196.    The Top Gun Article constitutes an unprivileged publication of defamatory statements by the Defendants on the Internet, and to third parties.

197.    The Defendants intentionally published the Top Gun Article knowing the falsity of the statements.

198.    The Defendants published the Top Gun Article with actual malice knowing the falsity of the statements.

199.    The Top Gun Article identifies Mr. Buckley by name.

200.    The Top Gun Article identifies Top Gun Options by name.

201.    Persons other than the Plaintiffs and the Defendants would have and actually have reasonably understood that the Top Gun Article and its statements related to and were about the Plaintiffs.

202.    As a direct result of the Defendants' conduct and their publication of the Top Gun Article, the Plaintiffs have suffered and continue to suffer damages including, but not limited to, harmed reputation, loss of goodwill, loss of prospective business, and other harm not fully realized.

<u>COUNT IV</u>
**PRODUCT DISPARAGEMENT AND TRADE LIBEL**

203.    The Plaintiffs hereby adopt and incorporate and re-allege Paragraphs 1 through 149 as if fully set forth herein.

204.    The Defendants published the Top Gun Article on the Internet to third parties.

205.    The Defendants acted with intent to harm the Plaintiffs in publishing the Top Gun Article.

206.    The Defendants knew or should have reasonable known that the statements in the Top Gun Article would likely result in damaging the good name and reputation of Top Gun Options.

207.    The Defendants knew or should have reasonably known that the Top Gun Article would likely result in inducing others not to deal with Top Gun Options or purchase Top Gun Option's products.

208.    The Defendants' Top Gun Article has actually played a material and substantial part in inducing others not to deal with Top Gun Options.

209.    The Defendants' Top Gun Article was the actual and proximate cause to special damages in an amount to be proven at trial for the Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Matthew Buckley and Top Gun Options, LLC prays for the following relief:

  a.  An award of actual damages in an amount to be determined at trial;

  b.  An award of attorneys' fees and costs pursuant to Florida Statute §§ 501.211 and 501.2105;

  c.  An award of punitive damages in an amount to be determined at trial;

  d.  Injunctive relief in a form of an order:

     i.  compelling the Defendants to immediately remove the Top Gun Article and any other content they published or otherwise distributed about the Plaintiffs on the Internet or by any other means;

     ii.  enjoin the Defendants from engaging in any conduct violating Florida Statute § 501.204; and,

     iii.  compelling the Defendants to engage in any such further conduct necessary to effectuate the foregoing relief; and

  e.  Any such other and further relief as this Court may deem just and proper or to which Plaintiff may be entitled as a matter of law and equity.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.


Dated: May 22, 2020                          K&L GATES LLP
                                             Southeast Financial Center
                                             200 South Biscayne Boulevard, Suite 3900
                                             Miami, Florida 33131
                                             Tel: 305 539 3300
                                             Fax: 305 358 7095

                                             By: */s/ Elisa J. D'Amico*
                                             Elisa J. D'Amico
                                             Florida Bar No. 76936
                                             elisa.damico@klgates.com
                                             Docketing.East@klgates.com

                                             *Attorneys for Plaintiffs Matthew Buckley and*
                                             *Top Gun Options, LLC*