Pre-Suit Notice Letter sent in See RendóN v. Bloomberg, L.P., 403 F. Supp. 3d 1269, 1273 n.2 (S.D. Fla. 2019), attached in Defendants' Motion to Dismiss, ECF No. 52-1 at pp. 99-101, as Exhibit 19.



THOMAS A. CLARE
tom@clarelocke.com
(202) 628-7401

# CLARE LOCKE
L L P

902 Prince Street
Alexandria, Virginia 22314

(202) 628-7400

www.clarelocke.com

By Overnight Mail & Electronic Mail

John Micklethwait
Bloomberg L.P.
Editor-In-Chief
731 Lexington Avenue
New York, NY 10022
Email: micklethwait@bloomberg.net

Ellen Pollock
Bloomberg Businessweek
Editor-In-Chief
731 Lexington Avenue
New York, NY 10022
Email: epollock@bloomberg.net

Re: Bloomberg Businessweek, "How To Hack An Election"

Dear Mr. Micklethwait and Ms. Pollock:

I write on behalf of my client, Juan José Rendón Delgado, to demand retraction of the multiple false and defamatory statements published by Bloomberg Businessweek ("Bloomberg") in the article entitled "How to Hack an Election" ("Article"), published online on March 31, 2016 and in the April 4-10, 2016 print edition of the magazine.

In the Article, Bloomberg and reporters Jordan Robertson, Michael Riley, and Andrew Willis ("Bloomberg Reporters") falsely stated that Mr. Rendón hired Andrés Sepúlveda to "rig elections throughout Latin America" and falsely stated, both directly by implication, that Mr. Rendón initiated, directed, and condoned illegal and unethical cyberattacks in order to influence the outcome of high-profile political elections. These highly inflammatory and damaging statements about Mr. Rendón are demonstrably false, defamatory *per se*, and have caused him significant economic and reputational harm. Accordingly, we demand that the Article be retracted immediately to mitigate causing further harm,



Statements in the Article that Mr. Rendón hired Andrés Sepúlveda to perform illegal or unethical work is demonstrably false and defamatory *per se*. As Mr. Rendón plainly informed the Bloomberg Reporters prior to publication of the Article, a consulting company operated by Mr. Rendón (not Mr. Rendón) contracted with Mr. Sepúlveda to perform contract work on a single web design project – a project on which Mr. Sepúlveda failed to fulfill his obligations. At no time did Mr. Sepúlveda perform any other function or service for (or on behalf of) Mr. Rendón or any of his companies, and at no time did Mr. Rendón – or any of his employees, agents, representatives – direct, authorize, condone, or know about any of the unlawful and unethical conduct attributed to Mr. Sepúlveda in the Article. Mr. Rendón was very clear with Mr. Willis prior to publication, both over the phone and in email correspondence, that the single web design project was the only contact (direct or indirect) he had ever had with Mr. Sepúlveda and that Mr. Rendón had documentary evidence directly refuting allegations of further contact, including email correspondence and aircraft flight manifests. Bloomberg and the Bloomberg Reporters recklessly disregarded the information and documentary evidence offered by Mr. Rendón prior to publication in moving forward with publication of the Article – and in publishing the specific false and defamatory allegations contained in the Article.

Bloomberg and the Bloomberg Reporters were on notice, prior to publication of the Article, that the false allegations published in the Article depend exclusively on an unreliable and untrustworthy sources, falling far short of journalistic standards, and are specifically contradicted by documentary evidence. *First*, Andrés Sepúlveda, the primary source and focus of the Article, is a convicted felon with clear incentive to make false allegations about others in order to benefit his own legal circumstances. *Second*, Mr. Sepúlveda has a well-documented history of manipulating email communications and documentation. Mr. Rendón specifically warned the Bloomberg Reporters that the email communications in their possession sourced from Mr. Sepúlveda were distorted and misrepresented in order to invent a criminal relationship between Mr. Sepúlveda and Mr. Rendón, and that Mr. Rendón's archived email communications and comprehensive written records refuted those false communications and contacts. The Bloomberg Reporters recklessly disregarded the information and documentation proffered by Mr. Rendón.

It is also evident that the Bloomberg Reporters had a preconceived storyline for the Article, held a clear pre-publication bias against Mr. Rendón and hid from him the true nature of their reporting. While the Bloomberg Reporters spent nearly a year – if not longer – developing false information about Mr. Rendón sourced from a convicted felon, they provided Mr. Rendón only a matter of days to respond to their questions and attempt to refute the false information. Once the Bloomberg Reporters did finally reach out to Mr. Rendón, they did so by misrepresenting that the Article would be about political campaigning, not about hacking in the political arena. Despite this, Mr. Rendón still complied and provided responses to questions pointing out obvious and easily verifiable falsehoods, which the Bloomberg Reporters recklessly disregarded in the Article.



\* \* \*

I am sure that you understand the seriousness of these issues. False allegations in the Article that Mr. Rendón somehow procured, directed, engaged in, or condoned criminal and/or unethical conduct to "hack" or "rig" elections throughout Latin America falsely attack Mr. Rendón's character, fitness and integrity in carrying out his trade and profession, and are defamatory *per se*. Mr. Rendón has worked tirelessly and with great diligence to earn his reputation as an ethical and effective political campaign consultant and as a man of great integrity. He is a pillar of the various communities he has called home, now South Florida. It was reckless and irresponsible for Bloomberg and the Bloomberg Reporters to damage that reputation with false allegations of criminal conduct. Those statements have caused significant, ongoing, and irreparable harm to Mr. Rendón's reputation and business interests, including the loss of many current and potential clients and business relationships. Accordingly, Mr. Rendón demands that Bloomberg and the Bloomberg Reporters immediately cease and desist from making any additional false and defamatory statements about him, retract the Article in its entirety, and issue a public apology to Mr. Rendón. Failure to take these necessary remedial steps will be viewed as additional evidence of actual malice.

Absent immediate responsible and responsive conduct by Bloomberg and the Bloomberg Reporters to retract the Article and apologize, Mr. Rendón will initiate promptly a defamation suit arising out of the false statements in the Article. Accordingly, we require that you immediately retain – and direct your staff, employees, agents, principals, and affiliates to retain – all documents and other materials relating in any way to the Article, including but not limited to all physical documents, text messages, phone records, emails (whether from personal or professional email addresses), and any other electronic documents relating in any way to the Article.

I look forward to your prompt response.

Very truly yours,

*Thomas A. Clare*

Thomas A. Clare