**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 0:20-cv-61023-RAR-Ruiz**

MATTHEW BUCKLEY and
TOP GUN OPTIONS, LLC,

      Plaintiffs,

v.

EMMETT MOORE and
TRADINGSCHOOLS.ORG,
      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Emmett

Moore and tradingschools.org[1] ("Defendants") by and through undersigned counsel, move to

dismiss Plaintiffs' Second Amended Complaint (cited herein as "SAC") for failure to state a

claim under which relief can be granted. For the reasons set forth more fully below, this Court

should grant Defendants' motion as to all causes of action.[2]

### I. INTRODUCTION

This is a purported defamation action about an article published three years ago on June

8, 2017 ("2017 Article") and statements made in the comments section of the 2017 Article

thereafter. (See SAC at ¶ 87). Defendant Emmett Moore published the 2017 Article as one of the

---

[1] Tradingschools.org is not a business entity. It is simply the URL of a website owned and
operated by Defendant Moore.
[2] Plaintiffs filed their original complaint on or about May 22, 2020, and filed their SAC for
damages on December 4, 2020, alleging the same counts for defamation *per se*, violation of
Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), tortious interference with
prospective economic advantage, and commercial disparagement/trade libel.

many reviews he publishes about trading educational materials and products on his blog, tradingschools.org. See id. at ¶¶ 48, 50, 51-53.

Plaintiffs' claims are fatally flawed. First, the 2017 Article and two of its comments occurred more than two years ago and are thus outside the two-year statute of limitations for libel. Second, Plaintiffs did not provide adequate notice to Defendants per Section 770.01, Florida Statute, prior to filing their defamation claims. Third, even if the procedural defects were not fatal to Plaintiffs' claims, the statements purported to be defamatory are protected opinion, and Plaintiffs' claims are barred by the Communications Decency Act and the single action rule. Fourth, Plaintiffs' FDUPTA is not properly pleaded and must be dismissed. Finally, because this matter involves publication of an issue of public interest in a public forum (the internet),  this Court should apply Florida's anti-SLAPP statute and award to Defendants their attorneys' fees.

## II. ARGUMENT

Plaintiffs' Second Amended Complaint fails to state claims upon which relief can be granted. Under Rule 12(b)(6), the Court must accept plaintiff's well-pleaded allegations as true and evaluate inferences from facts in favor of the plaintiff. See Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012). Dismissal is appropriate when on the basis of a dispositive issue of law, no construction of the allegations will support the cause of action. See Bpi Sports, LLC v. Labdoor, Inc., Case No. 15-62212-CIV-BLOOM, 2016 WL 739652 at *1 (S.D. Fla. Feb. 25, 2016)(citing and quoting Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### A. Plaintiffs' Cause of Action for Defamation Per Se Fails Because it is Barred by the Statute of Limitations.

Florida has a strict two-year statute of limitations for any alleged defamation claim. Fla. Stat. § 95.11(4)(g). Florida also follows what is known as the "single publication rule" which

2

finds only a single cause of action for damages is permitted for a defamation claim. That single cause of action is deemed to accrue at the time of first publication. <u>See</u> Fla. Stat. Sec. 770.07 (quoting, "The cause of action for damages founded upon a single publication or exhibition or utterance…shall be deemed to have accrued at the time of the first publication or exhibition or utterance thereof in this state."). Florida case law is clear that the statute of limitations begins to run at the time of the publication, as opposed to when the plaintiff discovers the alleged defamation. <u>Ashraf v. Adventist Health Sys./Sunbelt, Inc.</u>, 200 So. 3d 173, 174 (Fla. 5th DCA 2016)(citing <u>Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan</u>, 629 So.2d 113, 114 (Fla. 1993)). The single publication rule applies to internet publications, as departing from the rule would "eviscerate" the statute of limitations for online publishers. <u>Norkin v. Fla. Bar</u>, 311 F. Supp. 3d 1299, 1304 (S.D. Fla. 2018).

Plaintiffs' defamation claim arises from the 2017 Article's first publication on June 8, 2017. (<u>See</u> SAC at ¶ 87). Therefore, any defamation claim based on the 2017 Article had to be filed on or before June 8, 2019.[3]  Plaintiffs filed their original complaint almost a year late on May 22, 2020 (D.E. 1). Therefore, any claims arising from the 2017 Article are barred under the two-year statute of limitations. In addition, the "Mark Comments," published on September 25, 2017 and December 25, 2017, are also time-barred as Plaintiff concedes that more than two years

---

[3] Usually in a 12(b)(6) challenge, the court must only look to the complaint and attached documents. However, the Court may consider documents to which a plaintiff refers in its complaint, when such documents are central to the claim and their contents are not in dispute. <u>See</u> <u>Financial Sec. v. Stephens, Inc.</u>, 500 F.3d 1276, 1284 (11th Cir. 2007); <u>see also</u> <u>Hoffman-Pugh v. Ramsey</u>, 312 F. 3d 1222, 1225-26 (11th Cir. 2002); <u>see also</u> <u>Fin. Sec. Assur., Inc. v. Stephens, Inc.</u>, 500 F. 3d 1276, 1284 (11th Cir. 2007). <u>See</u> SAC at ¶¶ 87, 89-91,94-95, 99, 103-105, 107-108 …<i>passim</i>). Here, the article and comments are central to Plaintiffs' claims, and their contents are not in dispute for purposes of this motion. Declaration of Susanne Arani ("Arani Decl.") at Ex. 1 (authenticating 2017 Article and its comments).

have elapsed since the time of their publication. See SAC at ¶¶ 87, 170, 175.

Contrary to Plaintiffs' allegation in their amended complaint, Google's third-party indexing of the 2017 Article or subsequent readers after the 2017 Article was published online does not renew the statute of limitations for the article or any of the comments posted thereafter. See SAC at ¶¶ 159, 212-214. Each comment in this case has its own two-year statutory limitation under the single publication rule, as Plaintiffs cannot plausibly plead any substantive changes to the article, comments or URL. See Yeager v. Bowlin, 693 F.3d 1076, 1082 (9th Cir. 2012)(holding a statement on a website is not republished unless the statement itself is substantively altered, added to, or the website is directed to a new audience).

Accordingly, Plaintiffs have timely filed this action only as to the comments made by users Mark, Sam, Olio, Jim and Tuddy between May 23, 2018 and May 15, 2020. See SAC at ¶¶ 180, 186, 191, 196, 205.

**B. This Court Should Grant Defendants' 12(b)(6) Motion Because Plaintiffs Did Not Provide Pre-Suit Notice Under Fla. Stat. Sec. 770.01.**

Even as to the handful of comments made within the statute of limitations, Plaintiffs have failed to satisfy the condition precedent set forth in Section 770.01 of the Florida Statutes. This section states in pertinent part:

> "[b]efore any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of libel or slander, **the plaintiff shall**, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast **and the statements therein which he or she alleges to be false and defamatory**."

Fla. Stat. Sec. 770.01 (emphasis added).

For several years, defendants operating blogs that disseminate information to the public in a public forum--the internet--have been treated as another "medium" under the statute. Comins v. Vanvoorhis, 135 So. 3d 545, 547, 559-560 (Fla. 5th DCA 2014); see also Plant Food Sys., Inc.

4

v. Irey, 165 So. 3d 859, 861 (Fla. 5th DCA 2015)(agreeing with Comins and applying Section 770.01 to an internet publication).

As mentioned before, compliance with the notice provision of Section 770.01 is a condition precedent to the filing of a defamation claim. See Ross v. Gore, 48 So. 2d 412, 415-16 (Fla. 1950). Without notice, **no cause of action exists at the time of filing the complaint**. Orlando Sports Stadium, Inc. v. Sentinel Star Co., 316 So. 2d 607, 610 (Fla. 4th DCA 1975). Without sufficient notice under Section 770.01, the Court should dismiss with prejudice any statements that fall outside the two-year statute of limitations and without prejudice as to any statements still within the limitations period. See Id.; Canonico v. Callaway, 26 So. 3d 53, 54, 56 (Fla. 2d DCA 2010).

Florida courts have consistently held that the written pre-suit notice must specify the particular statements that are alleged to be false and defamatory. See Adams v. News-Journal Corp., 84 So. 2d 549, 553 (Fla. 1955); Nelson v. Associated Press, Inc., 667 F. Supp. 1468, 1474-75 (S.D. Fla. 1987)(finding Section 770.01 notice insufficient when Plaintiff failed to quote verbatim language from the article); Gifford v. Bruckner, 565 So. 2d 887, 888 (Fla. 3d DCA 1984)(failing to fully identify alleged defamatory statements is insufficient notice);  See RendóN v. Bloomberg, L.P., 403 F. Supp. 3d 1269, 1274 (rejecting a three-page retraction letter because it lacked specificity on defamatory statements).[4]

Plaintiffs attached as "Exhibit A" to their SAC--a series of nearly identical emails that demand the 2017 Article's URL be removed.  Only the February 2019 email from D.E. 47

---

[4] The Court also stated that since the complaint was specific as to defamatory statements, it demonstrated evidence of the notice letter plaintiff was capable of providing, but failed to do, in his pre-suit notice. Id.; see also Arani Decl. at Ex. 2 (copy of RendoN retraction letter held insufficient).

starting at p. 4,  was sent within two years of the 2017 Article's publication (email dated

February 22, 2019)). The email was purportedly sent from a company called "Business Image

Lift" and asks for removal of the URL because Defendants' site contains "slanderous,

defamatory material against our client," and that Plaintiff Mr. Buckley "has a Copyright." See

gen. at p. 4.  This email does not identify a single purportedly defamatory statement in the 2017

Article or its comments.[5]

Approximately a year later on February 26, 2020, prior counsel for Plaintiffs sent to

Defendants a letter that also fails to comply with Chapter 770, Florida Statutes. (See Exhibit B

D.E. 47 p 16-17) This letter only alleges "[y]our claims about my client are provably false. Not

only are your actions defamatory, but also you are harassing my client. As such, you are hereby

put on written notice to cease and desist any further harassment of my client including your

defamatory news articles, comments, and false claims."  Id. This letter does not identify any

alleged defamatory statements from the 2017 Article or any comment posted thereafter. The

February 2020 letter is the most recent demand for retraction sent by Plaintiffs. No notice at all

has been provided with respect to the allegedly defamatory comment made by anyone after

February 26, 2020, including user Tuddy on May 15, 2020. See SAC ¶ 205.

Because Plaintiffs did not comply with Section 770.01, this Court should dismiss their

complaint. See Tobinick v. Novella, Case No. 9:14-CV-80781, 2015 WL 1191267, at *19 (S.D.

Fla Mar. 16, 2015); see also RendóN, 403 F. Supp. 3d at 1275 (dismissing with prejudice

multiple counts on a motion to dismiss because compliance with notice and re-filing of the suit

---

[5] The other emails purportedly sent by Business Image Lift, though sent after the statute of
limitations expired on the 2017 Article, likewise do not identify a single allegedly defamatory
statement and simply demand Defendants take down the entire URL that hosts the 2017 Article
and its comments. (D.E. 47 pp. 4-14)

would be time-barred).

    C. **Plaintiffs' Allegations for Comments Published Within the Two-Year Statute of Limitations because They are Either Opinion, Rhetorical Hyperbole, or Both.**

As to the comments listed in Plaintiffs' Second Amended Complaint that were published within two years of the filing of Plaintiffs' original complaint, these statements are non-actionable. First Amendment protections apply in all defamation claims and are rooted in the "[p]rofound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." New York Times v. Sullivan, 376 U.S. 254, 270 (1964).[6]

The First Amendment protects statements of opinion. See Keller v. Miami Herald Publ'g Co., 778 F.2d 711, 714-15 (11th Cir. 2018)(applying Florida law). Whether an alleged defamatory statement is non-actionable pure opinion or an expression of fact or mixed opinion is a question of law. Florida Medical Center, Inc., v. New York Post Co., Inc., 568 So. 2d 454, 457 (Fla. 4th DCA 1990). In determining whether a statement is non-actionable pure opinion, the court must examine the totality of statement and not just a phrase or sentence, the context in which the statement was published, the intended audience, and the medium of dissemination. From v. Tallahassee Democrat, Inc., 400 So. 2d 52, 57 (Fla. 1st DCA 1981).

In addition to opinion, statements that constitute rhetorical hyperbole are not actionable in defamation claims. A statement is considered rhetorical hyperbole when "'the language itself negates the impression that the writer was seriously maintaining that the plaintiff committed the particular act forming the basis of defamation.'" Aflalo v. Weiner, Case No. 17-61923-civ-MORENO, 2018 WL 3235529, at *8 (S.D. Fla. July 2, 2018)(citing and quoting Fortson v. Colangelo, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006)(internal quotations and citations

---

[6] Plaintiffs claim Defendant Emmett Moore authored and published each comment, an allegation that Defendant denies, however Plaintiffs' claim, though baseless, must be taken as true for purposes of Defendants' 12(b)(6) motion.

omitted)); see also Seropian v. Forman, 652 So. 2d 490, 491-93 (Fla. Dist. Cit. App. 1995)(finding the term "influence peddling" as a rhetorical hyperbole). Whether a statement is rhetorical hyperbole is a question of law for the Court to determine. See Colodny v. Iverson, Yoakum, Papiano & Hatch, 936 F. Supp. 917, 923 (M.D. Fla. 1996). The totality of the statement and context is "paramount." Fortson, 434 F. Supp. 2d at 1379.

> 1. *The comment published by "Mark" on May 23, 2018, is rhetorical hyperbole, pure opinion and defamation per quod.*

Plaintiffs allege "Mark" stated on May 23, 2018, that. The statement, "Buckley will ride this con into the dirt, I'm sure." See SAC at ¶ 183. This is a matter of pure opinion because the entirety of the comment relies upon additional context from "Mark"—including Plaintiff's additional offerings of open sessions, a website that could track Plaintiff's actual losses, and a website link that shows Plaintiff's losses. (See Arani Decl. at Ex. 1 at p. 9). In addition, the use of the word "con" is rhetorical hyperbole because it could mean anything from a persuasive pitch to an illicit act. Further, no person honestly could believe that Plaintiff would literally "ride" something into dirt. This is exactly the sort of opinion, hyperbole and expressive speech found in the comment section of a published article or blog. See Colodny, 936 F. Supp. at 924 (noting part of its decision in finding non-actionable opinion was because the "fraud" statement appeared in the commentary section to an article that invites opinion).

In addition, "Mark" states, "Keep in mind, if any of the quoted stats, like up 48% this year, were true, Buckley would post the detailed transaction logs to demonstrate his greatness. For an example of how that is done, aim your browser at followmetrades.com."  (See Arani Decl. at Ex. 1 at p. 9); SAC at ¶ 182. This is not actionable as it is an incomplete hypothetical and a matter of "Mark's" opinion. In addition, the statement is not defamatory on its face and cannot

support a claim for defamation as such.

Lastly, both "Mark" statements are not defamation *per se* as they cannot be attacked without outside innuendo or extrinsic evidence. See Rubinson v. Rubinson, Case No. 20-CV-80527-KAM, 2020 WL 4271866 at *5 (S.D. Fla. July 24, 2020)(citing Alan v. Wells Fargo Bank, N.A., 604 F. App'x 863, 865 (11th Cir. 2015). Plaintiffs failed to plead defamation *per quod*, and therefore, their defamation *per se* claim for this comment must be dismissed.

> *2. The "Sam" comment posted on September 7, 2019, is non-actionable opinion and rhetorical hyperbole.*

The September 2019 "Sam" comment reads as follows:

> "Completely agree with this review. Top Gun options is a sham. 1) simulated, 2) always claiming wins, 3) the political ranting is truly repulsive and is actually the reason I finally quit the program. Was irksome listening to this cocky political irrelevant ranting on a day to day basis."  (See Arani Decl. at Ex. 1 at p. 7); (SAC at ¶ 186).

Like the word "con," the word "sham" is capable of different interpretations and is colorful and expressive language that should be deemed rhetorical hyperbole. The author is offering his opinion on why he left Plaintiff Top Gun Options and is basing his statement on his personal experience. "Sam" relies upon Plaintiffs' simulated-only products and services in arriving at his opinion, which is a fact that Plaintiffs admit in their amended complaint when they agree that Mr. Buckley only uses fake or simulated trading. See SAC at ¶¶ 30, 93. In addition, the word "sham" is capable of less derogatory meaning than the word "fraud," which at least one court applying Florida defamation law has allowed as a matter of opinion in a comment section. See e.g. Colodny, 936 F. Supp. at 923-24. Lastly, the statements authored in the comment section of the 2017 Article do not give rise to a defamation *per se* claim because they require outside, extrinsic evidence, and Plaintiffs have not pled defamation *per quod*. As such, this defamation

*per se* claim should be dismissed.

> 3. *"Olio's" October 12, 2018, comment is non-actionable opinion and rhetorical hyperbole.*

The commenter, "Olio" states in part as follows:

> "As a 'fellow' ex-USN pilot, let me just say there are so many ex-service guys out there doing their best to cash-in on prior service. Back in the 'the day' this was never a thing, but somehow it's become politically-correct for certain groups to hero-worship these guys. That's a mistake – believe me. And in Buckley's case, he spends more time on his right-wing politics than making good trades. Realize his income, like most 'trade room services' is from subscriptions. And restrictive refund policies are because of the high rate of folks who learn this and ask for a refund. Look past the professional-appearing website and demand real money results. Buyer beware." Id. at ¶191; (See Arani Decl. at Ex. 1 at p. 13).

The author "Olio," is stating a pure opinion with the expression, "Buyer beware." Olio relies on his personal experience of ex-service members trying to "cash-in" on their service record and his opinion that this is unfavorable or misguided. His statement, "buyer beware" is based on his personal observations and conclusions and is a cautionary statement that is not defamatory on its face either. The statement "buyer beware," is a commonly used phrase that should also be treated as rhetorical hyperbole and does not constitute defamation *per se*.

> 4. *"Jim's" February 2020 comment is non-actionable opinion, hyperbole and not defamation per se.*

"Jim's" statement that he "agrees with the scammer comments here," is Jim's opinion regarding other people's opinion. (See SAC at ¶ 196). There can be no truer expression of opinion than this statement. Opining that Plaintiffs and their website do not post losses as a "red flag," is opinion and a commonly used expression to denote caution in the form of rhetorical hyperbole. Additionally, "Jim's" statement that, "[n]o information or posting on losers but I'm sure I would be denied any type of honest, accurate past performance without manipulation or

hassle," is an opinion based upon a hypothetical. It cannot be proven true or false as an incomplete hypothetical  and therefore does not constitute defamation *per se* either.[7]

> *v. The "Tuddy" and Defendant Emmett Moore comments must be dismissed because there are no facts or fair notice under Fed. R. Civ. Proc. Rule 8(a) as to these comments.*

In order to satisfy Rule 8(a) pleading requirements, a complaint must provide the defendant fair notice of the plaintiff's claims and the grounds upon which it rests. See <u>Bpi Sports, LLC</u>, 2016 WL 739652 at *3 (citing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002)). The pleading standard requires more than plain assertions devoid of facts, and requires more than "labels and conclusions," with respect to the cause of action. See <u>Bell Atlantic Corp v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see</u> <u>Ashcroft v. Iqbal</u>,  556 U.S. 662, 678 (2009).

Here, Plaintiffs' amended complaint alleges merely that, "Mr. Moore posted new content under his own name in response to the comments published on September 3, 2018, and January 29, 2019." (SAC at ¶ 210; <u>see also</u> <u>id.</u> at ¶ 208)(stating Defendant Emmett  Moore responds to comments posted in his blog opinion section). There are no further allegations regarding the alleged Moore comments, not even a statement putting Defendants or the Court on notice of what the statement was, how it was injurious or what harm is alleged. Stating Defendant Mr. Moore posted two comments on his blog, and nothing more, is not sufficient under 12(b)(6) and Rule 8(a) standards.[8]

---

[7] Similarly, the "Jim" statement that, "It falls under mainly a fundamental view of trading with little to no consideration on technical analysis or other methodologies for a well-rounded, objective but analytical perspective," is so inherently incoherent and/or grammatically incorrect that it could not give rise to a defamatory meaning, let alone defamation *per se*.

[8] The same holds true for the "Tuddy" comment where Plaintiffs state, "A comment by Tuddy alleges that the Plaintiffs convey false information through explaining why they utilize simulated and paper trading ("Tuddy Comment")."  <u>Id.</u> at ¶ 206.

**D. Defendants are Immune to Third-Party Comments on Their Website Under the Communications Decency Act.**

Plaintiffs' shotgun complaint alleges that if Defendant Emmett Moore did <u>not</u> author comments under a pseudonym, then he is still liable for the comments of third parties because he "encouraged and solicited" their authorship in the publication of his blog. <u>See</u> <u>id.</u> at ¶¶ 173, 178, 184, 189, 194, 203.

It is well settled law under the Communications Decency Act ("CDA") pursuant to 47 U.S.C. Sec. 230, that a provider or user of an interactive computer service is immune from liability of third-party comments in actions seeking either monetary or injunctive relief. <u>Medytox Solutions, Inc. v. Investorshub.com, Inc.</u>, 152 So. 3d 727, 731 (Fla. 4th DCA 2014). The CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided *by another information content provider*."  <u>See</u> 47 U.S.C. Sec. 230 (c)(1)(emphasis added). "Websites that allow third parties to make posts regarding a product or service, regardless of whether the post is made anonymously or under a pseudonym, have been held to be interactive computer services." <u>Roca Labs, Inc. v. Consumer Op. Corp.</u>, 140 F. Supp. 3d 1311, 1318 (M.D. Fla. 2015). Even a website's decision as to whether to publish, withdraw, postpone or alter third-party content are barred under the CDA. <u>Id</u>. at 1319.

Here, Plaintiffs' alternative theory of liability is barred by the CDA. Plaintiffs' amended complaint admits that Defendants operate the website tradingschools.org. (<u>See</u> SAC at ¶¶ 13-16, 47-53). Plaintiffs further allege that Defendants invite the public to comment and that Defendants are liable for third-party comments in the comment section of the blog because Mr. Moore

allegedly "solicited" or "encouraged" them. See id. at ¶¶ 158, 173, 178, 184, 189, 194, 203.9

Because Plaintiffs recognize Defendants' website as one that permits third-party comments,

Defendant is considered an "interactive computer service" under case law. As such, Defendant is

immune under the CDA from Plaintiffs' tort claims arising from this admitted third-party content

based on Plaintiffs' amended complaint.

### E. Plaintiffs' Claim Under FDUPTA Fails because Plaintiffs Failed to Plead Defendants Violated FDUPTA Within the Territorial Boundaries of Florida, Failed to Plead Actual Damages and Failed to Allege a "Consumer Injury."

> *1. Plaintiffs have not pled and cannot plausibly plead that Defendants were within the state of Florida when the violation of FDUPTA transpired.*

A violation of FDUPTA must occur within the territorial boundaries of Florida. Five for

Entm't S.A. v. Rodriguez, 877 F. Supp. 2d 1321, 1330-31 (S.D. Fla. 2012); see also Hakim-

Daccach v. Knauf Int'l GmbH, Case No. 17-20495-Civ-Scola, 2017 WL 5634629 at *11 (S.D.

Fla. Nov. 21, 2017)(citing Millennium Communications & Fulfillment, Inc. v. Office of Attorney

General, 761 So. 2d 1256, 1262 (Fla. 3d DCA 2000)).

The Court in Five for Entm't S.A. v. Rodriguez was confronted with an online press

release that was allegedly defamatory and resulted in a FDUPTA claim because of the alleged

defamation and extra-contractual demands. Id. at 1323, 1326. The Court found violation under

FDUTPA did not survive Defendants' 12(b)(6) challenge because plaintiff did not plead to

"make certain" that the conduct occurred within the territorial boundaries of Florida, as is

required in FDUPTA actions. Id. at 1330-31 (quoting, "Where Baldiri [a Defendant] *was located*

*when he uttered any of the statements identified in the Complaint has not been pled*. Nor is there

any indication where the extra-contractual demands or the demands for pre-payment of the

---

[9] Because Plaintiffs have mutually exclusive theories of who published comments to the 2017 Article (Defendant versus third-party comments), their complaint must be amended to include "Doe" defendants as indispensable parties to their four counts under Fed. R. Civ. Proc. Rule 19.

$480,000 occurred.")(emphasis added). As such, the Court dismissed the FDUPTA cause of action with leave to amend to make certain that the statements and conduct at-issue occurred within the territorial boundaries of Florida. Id. at 1331.

Plaintiffs failed to plead any factual allegations that the conduct in violation of FDUPTA occurred within the territorial boundaries of Florida. In fact, Plaintiffs allege Defendant directed their conduct on the internet from California and made communications into the state of Florida. See id. at ¶¶ 5-6, 9, 13-15, 17. FDUPTA requires that violations occur within this state's boundaries, and it is insufficient for Plaintiffs to plead that the conduct giving rise to violation of FDUPTA occurred anywhere other than within Florida's borders. This Court should therefore dismiss the FDUPTA claim for failure to adequately plead jurisdiction for the alleged violation.

*2. Plaintiffs have not sufficiently pled actual damages for their FDUPTA claim.*

In addition, a Plaintiff must plead actual damages under FDUPTA. Florida courts consider actual damages, the third element of a FDUTPA claim, to be a "term of art," which does not include "consequential damages." Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc., 270 F. Supp. 3d 1340, 1352 (S.D. Fla. 2017)(citing Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc., Case No. 15-81062-CIV, 2016 WL 4256916, at *5 (S.D. Fla. May 16, 2016)). Lost profits, diverted or lost sales and reputational harm are all consequential damages for purposes of FDUPTA, and are not recoverable. See id.; see also Bpi Sports, LLC, 2016 WL 739652 at *13 & n.2 (finding lost profits and reputational harm were not actual damages under FDUPTA).

Plaintiffs' amended complaint alleges that the 2017 Article deterred consumers from doing business or continuing to do business with Plaintiffs as lost profits. See SAC at ¶¶ 263-64. Loss of business income are *per se* consequential damages and not sufficient under FDUPTA,

14

even when alleged as past lost income. See Midway Labs U.S., LLC v. S. Serv. Trading, Case No. 19-24857-CIV-GODMAN, 2020 WL 2494608 *17 (S.D. Fla. May 14, 2020)(detailing precedent on the issue of past lost profits and FDUPTA, and concluding a lost profit damage "[i]s no less consequential merely because it is a past profit"). As such, damages for lost or diverted sales from Top Gun Options are not recoverable as actual damages under FDUPTA.

Plaintiffs' amended complaint alleges new facts that Plaintiffs expended money on reputation repair from Business Image Lift, LLC, in order to support their FDUPTA claim. (See SAC at ¶¶ 221-222, 240, 266). First, the work specified in the amended complaint was for the four retraction emails that Plaintiffs attached as Exhibit A to their amended complaint. However, these are legal notices in that they were sent by a paralegal and several of the exhibits have a New York licensed attorney as a recipient to the email. (See gen. Ex. A to SAC, D.E. 31-1; see Request for Judicial Notice ("RFJN") No. 1, (New York Unified Court's public record for attorney "Pamela S. Roth" with current email address)). Further, Plaintiffs admit that these emails should be treated as legal fees because they argue for this Court to deem them sufficient pre-suit notice, sent on behalf of "the Plaintiff" in order to comply with Section 770.01  See SAC at ¶¶220-222, 228. Attorney and legal fees are not recoverable as actual damages under FDUPTA. As such, this Court should find this alleged damage unconvincing for purposes of FDUPTA's actual damages requirement.

Secondly, even if they were not legal or attorneys' fees, any paid expense for reputational repair is a request to have Plaintiffs compensated for a damage—loss to reputation—which is explicitly non-recoverable under FDUPTA. The cost of "reputation repair" is inseparable and derivative from loss of reputation, and therefore *per se* consequential damages of alleged reputational harm. See Kia Motors America Corp. v. Butler, 985 So. 2d 1133, 1140 (Fla. 3d

DCA 2008)(prohibiting cost of repairing a vehicle in a manufacturing defect claim under FDUPTA and deeming vehicle repair costs as consequential damages).

Even at the dismissal stage, actual damages must be pled, else the FUDPTA claim fails. All claimed harms in the amended complaint are strictly consequential damages, and as a result, the claim under FDUPTA as pled cannot survive Defendants' 12(b)(6) motion.

> 3. *Plaintiffs have not alleged a consumer injury as defined by statute and case law for FDUPTA a violation.*

As for "consumer injury" under FDUPTA, a plaintiff must show that he or she is a consumer, or "one who has engaged in the purchase of goods or services." See Midway Labs U.S., 2020 WL 2494608, at *4. FDUPTA only allows recovery of damages related to the property that was subject to a consumer transaction. Fla. Stat. Sec. 501.212(3); Stewart v. Arrigo Enterprises, Inc., 266 So. 3d 207, 212-13 (Fla. 4th 2019)(the plaintiff must show the consumer injury).

Here, Plaintiffs need to be the consumer or person with a consumer injury as defined by statute and case law above. However, Plaintiffs did not engage in the purchase of goods or services from Defendants. Plaintiffs' allegation of extortion (which Defendants deny) in this case is summarized in paragraph seventy-two of their amended complaint when they state, "Mr. Moore demanded that Mr. Buckley pay Mr. Moore $1,800.00 in exchange for **not** writing the article about Top Gun Options." (emphasis in SAC). This is an offer to not engage in a consumer transaction. Although Plaintiffs do claim the alleged communication was deceptive and immoral, it did not result in a consumer transaction between Mr. Buckley and Mr. Moore. Therefore, Plaintiffs cannot demonstrate a consumer injury under FDUPTA.

**F. Plaintiffs' Causes of Action for Trade Libel, Tortious Interference with Prospective Economic Advantage and Violation of FDUPTA Fail because of Florida's "Single Action Rule."**

In Florida, the single action rule and single publication rule precludes, '[m]ultiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based." e-ventures Worldwide, LLC v. Google, Inc., 188 F. Supp. 3d 1265, 1278 (M.D. Fla. 2016)(quoting Ovadia v. Bloom, 756 So. 2d 137, 141 (Fla. 3d DCA 2000)); see also Fridovich v. Fridovich, 598 So. 2d 65, 69-70 (Fla. 1992). The rule is designed to prevent a plaintiff from circumventing defamation defenses by recasting their claim into different causes of action that compensate for the same harm. Callaway Land & Cattle Co., Inc. v. Banyon Lakes C, 831 So. 2d 204, 207-08 (Fla. 4th DCA 2002); see also Orlando Sports Stadium, Inc., 316 So. 2d at 609 (finding the single action rule precludes interference claims premised upon allegedly defamatory statements for which no pre-suit notice was supplied); First Protective Ins. Co. v. Weiss Grp., LLC, Case No. 15-CA-1403, 2016 Fla. Cir LEXIS 9741, at *7 (Fla. 13th Jud. Cir. June 3, 2016)(citations omitted)(finding FDUPTA claim based on same publications that supported defamation claim was barred by single cause of action rule). As such, an alleged single defamatory publication only gives rise to a single cause of action – for defamation. e-ventures Worldwide, 188 F. Supp. 3d at 1278.

In this case, Plaintiffs' amended complaint for tortious interference with prospective economic advantage relies upon the same set of facts as their defamation *per se* claim. Plaintiffs allege Defendants' intention was to publish a defamatory article, in order to harm Plaintiffs, and that the publication of the 2017 Article, "[c]onstitutes an intentional and unjustifiable interference with prospective clients," that resulted in lost profits. (See SAC at ¶¶ 278-281). Similarly, Plaintiffs' claim for trade libel only relies upon the 2017 Article's publication and

third-party comments because the amended complaint states that Defendants had intent to harm Plaintiffs with the publication, and that the publication would likely result in lost profits for Plaintiffs. Id. at ¶¶ 333-337. Both causes of action are therefore recasting the same defamation claim to compensate for the same resulting harm as defamation.

Similarly, Plaintiffs' FDUPTA and Plaintiffs' defamation *per se* claims have identical damages because all harms allegedly result from the publication of the 2017 Article and comments. (See SAC at ¶¶ 262-268)  Plaintiffs allege that Plaintiffs' refusal to pay Defendant a sum of money caused Defendant to author and publish the 2017 Article. Id. at ¶¶ 73-75, 78. As malicious and untruthful as Plaintiffs' claims appear from their original and amended complaint, they are irrelevant. This is because the motivations of a publisher of content, *whether fair or unfair*, are still protected by the First Amendment. e-ventures Worldwide, LLC v. Google Inc., Case No. 2:14-cv-00646, 2017 WL 2210029 (M.D. Fla. Feb. 8, 2017)(quoting Miami Herald Publ'g Co. v. Tornillo, 418 U.S. 241, 258 (1974)).

Furthermore, the FDUPTA statute expressly states that the application of the claim does not apply to, "An act or practice required or specifically permitted by federal or state law." See Fla. Stat. Sec. 501.212(1). Therefore, this Court should treat Defendants' First Amendment protections as to defamation, including the statute of limitations, as protected acts under state and federal law, and dismiss Plaintiffs' FDUPTA claim, should their defamation *per se* claim fail.

Lastly, when the alleged violation is the act of publication of information, then FDUPTA will only apply to commercial speech—or, "expression related solely to the economic interests of the speaker and its audience." Bongino v. The Daily Best Co., LLC, Case No. 19-CV-14472, 2020 WL 6470639 (S.D. Fla. Aug. 6, 2020)(quoting Tobinick v. Novella, 848 F.3d 935, 950 (11th Cir. 2017)). In addition, publications do not convert informational articles into commercial

speech, despite having some commercial purpose, such as providing for profit content to subscribers. Id. (citing Tobinick, 848 F.3d at 952). Therefore, this Court should dismiss Plaintiffs' FDUPTA claim because they admit in their amended complaint that Defendants provide informational reviews about traders and trading products with google advertising, and because the informational review of the 2017 Article is the basis of their FDUPTA violation. See SAC at ¶¶262-265.

### G. This Court Should Apply Florida's Anti-SLAPP Statute to Plaintiffs' Claims.

Florida enacted its anti-SLAPP statute to "[p]rotect the right in Florida to exercise the rights of free speech in connection with public issues…as protected by the First Amendment to the United States Constitution." Fla. Stat. Sec. 768.295(1). Florida's anti-SLAPP statute states:

> A person or governmental entity in this state may not file or cause to be filed, through its employees or agents, any lawsuit, cause of action, claim, cross-claim, or counterclaim against another person or entity without merit and primarily because such person has exercised the constitutional right of *free speech in connection with a public issue. . ..*" (emphasis added) Id. at Sec. 768.295(3).

Free speech in connection with a public issue is any written or oral statement that is "[p]rotected under applicable law and… is made in or in connection with a play, movie, television, program, radio broadcast, audiovisual work, book magazine article, musical work, news report or other similar work." Id. at Sec. 768.295(2)(a).

Florida's anti-SLAPP statute has been applied in this state's federal courts in matters involving free speech in connection with public issues. For example, the Eleventh Circuit recently upheld the district court's ruling that Florida's anti-SLAPP statute applied to an online news article regarding plaintiff's girlfriend and her "scam" to solicit money from the public under the ruse of a cancer diagnosis. Parekh v. CBS. Corp., 820 Fed. Appx. 827, 836 (11th Cir.

2020).[10] This Court likewise has found that Florida's anti-SLAPP statute *applies* in federal courts exercising diversity jurisdiction. Bongino, 2020 WL 6470639 at *8; see Vibe Ener v. Duckenfield, Case No. 20-cv-22886, 2020 WL 6373419, at *5 (11th Cir. Oct. 28, 2020)(applying Florida's anti-SLAPP to meritless complaint because claims were barred by res judicata). Florida federal courts have also applied anti-SLAPPs in cases involving articles on blogs, like Mr. Moore's.  Tobinick v. Novella, 108 F. Supp. 3d 1299, 1302,  (S.D. Fla. 2015)(applying California's anti-SLAPP provision under Cal. Civ. Proc. Sec. 425.16 et seq.)[11]

Plaintiffs' amended complaint admits that Defendants' 2017 Article is a matter of public concern and free speech. Plaintiffs state that Defendants are in the business of reviewing investment products and trading educational materials on their public, online blog. (See SAC ¶¶ 48, 50, 51-53). Plaintiffs also state that they are manufacturers and distributors of the very same products and services that Defendant Mr. Moore reviews, in particular, educational services. Id. at ¶¶ 25-33, 93. Plaintiffs admit that the public "relies on" Defendants' publications or trading reviews in order to decide whether to subscribe to a trading service, and also that Plaintiffs themselves engage the public with respect to their opinions on trading. Id. at ¶¶ 25, 38-40, 53.

Therefore, it is clear that this case involves a public issue, in a public forum, about an issue of free speech. As such, Florida's anti-SLAPP statute must apply, and the Court should find that Plaintiffs' amended complaint is "without merit" for the reasons set forth above.

---

[10] The Parekh v. CBS Corp. opinion is deemed unpublished. However, the Eleventh Circuit's Rule 36-2 provides that unpublished opinions, while not considered binding precedent, can be cited as persuasive authority.

[11] Should this Court be inclined to deny Defendants' application and protection under Florida's anti-SLAPP statute, Defendants request deferral or denial without prejudice on the issue in order to argue at a later date the applicability of California's anti-SLAPP statute under a choice of law analysis.  (See RFJN at No. 2, (order protecting Mr. Moore's blog article and speech under California anti-SLAPP, and dismissing the action)).

**III. CONCLUSION**

For the reasons set forth above, Defendants respectfully request this Court issue an order

granting Defendants' motion to dismiss as to Plaintiffs' Second Amended Complaint.

Respectfully submitted,


**Deanna K. Shullman**

Deanna K. Shullman, Esq.
Florida Bar No. 514462
dshullman@shullmanfugate.com
Shullman Fugate PLLC
2101 Vista Parkway
Suite 4006
West Palm Beach, FL  33411
Tel.: (844) 554-1354


**Susanne Arani**

Susanne Arani, Esq.
*Admitted Pro Hac Vice*
California Bar No. 238891
susarani@gmail.com
1028 Rosario Lane
Vista, California 92084
Tel.: (760) 331-8426


*Attorneys for Defendants Emmett Moore &*
*Tradingschools.org*