UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:20-cv-61023-RAR-Ruiz

MATTHEW BUCKLEY and
TOP GUN OPTIONS, LLC,
    Plaintiffs,

v.

EMMETT MOORE and
TRADINGSCHOOLS.ORG,
    Defendants.
_____/

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendants submit their reply brief in support of their Motion to Dismiss ("Mot." or "Motion") Plaintiffs' Second Amended Complaint ("Complaint" or "SAC"), which is based on the June 8, 2017 article Defendants published regarding Plaintiffs ("2017 Article").

I. ARGUMENT

**A. Plaintiffs Failed to Serve Pre-Suit Notice and Their Claims Must Be Dismissed.**

Plaintiffs' Opposition fails to excuse why, to this date, Plaintiffs failed to serve sufficient pre-suit notice under Florida Statute, Sec. 770.01, as is required before filing any defamation claim. See, e.g., Orlando Sports Stadium, Inc. v. Sentinel Star Co., 316 So. 2d 607, 610 (Fla. 4th DCA 1975); Canonico v. Callaway, 26 So. 3d 53, 54, 56 (Fla. 2d DCA 2010). Plaintiffs may have sent a letter, but that letter failed to identify a single allegedly defamatory statement and thus failed to comply with Chapter 770, Florida Statutes.

Defendants' Motion concisely argues based on well-established law that no cause of action for defamation exists in Florida unless and until a plaintiff places a defendant on written notice of alleged defamatory statements. Mot. at p. 5. Plaintiffs in this case argue that because the alleged defamation in the 2017 Article was so numerous, that serving Section 770.01 notice

1

of the written statements would have been cumbersome or futile.  See Pltfs.' Op at p. 5, ¶4.  As cited in the Motion, Plaintiffs here cannot claim written notice was impractical when they have filed three complaints with written, alleged defamatory statements.  See Mot. p. 5 fn. 4 (citing RendoN v. Bloomberg, L.P., 403 F. Supp. 3d 1269, 1274 (S.D. Fla. 2019) (noting written statements in a complaint are evidence of the written notice plaintiff should have provided).  More so, Defendants cannot find any case law that supports Plaintiffs' argument that written pre-suit notice under Section 770.01 is ever excused because it is difficult or cumbersome.

Rather, sufficient written notice under Section 770.01 provides a defendant the opportunity to review the statements in advance of litigation, and the retraction of any statement prior to litigation prevents an award of punitive damages against the defendant for the written statement.  See Fla. Stat. Sec. 770.02.  Therefore, pre-suit notice under Section 770.01 is vital to defendants accused of defamation in Florida, like Defendants in this case.

Secondly, Plaintiffs claim pre-suit notice is not required for Mr. Moore's 2017 Article because Plaintiffs do not consider him a "media defendant." Pltfs.' Op. at p. 4.  Defendants' Motion cites to Comins v. Vanvoorhis as precedent for treating informational blog articles, like the 2017 Article, as another "medium" under the pre-suit notice statute. See Mot. at p. 4, ¶ 4; Comins v. Vanvoorhis, 135 So. 3d 545, 547-548 (Fla. 5th DCA 2014).  Regardless of Plaintiffs' disagreement with the characterizations in the 2017 Article, it is an article and blog regarding Plaintiffs' trading and investment services, and was and is entitled to sufficient pre-suit notice. See SAC at ¶¶ 14, 48-51; Mot. p. 5.  Plaintiffs instead attempt to create an exception to pre-suit notice again, where no exception under the law exists.

Plaintiffs falsely argue to this Court that Mr. Moore waived pre-suit notice because he didn't respond to the retraction notices. Pltfs. Op. at p. 2 ¶4, pp. 3-4.  Defense counsel

specifically requested notice from Plaintiffs' counsel of the alleged defamatory statements months prior to the filing of the complaint.  See Susanne Arani Decl. at Ex. 1.[1]  Plaintiffs conveniently ignore this evidence that was twice disclosed to them prior to filing their opposition to make an unmeritorious "waiver" argument.  Id. at ¶¶ 5-6.  Even so, Plaintiffs have not argued Mr. Moore's terms of service waived notice either, as they admit the terms of service require a court order prior to the removal of third-party comments.  Pltfs.' Op. at p. 3, ¶ 5.

Because Section 770.01 pre-suit notice has not been made in this case, the Court should dismiss Plaintiffs' complaint unless and until they can comply with the statute.

**B. The Statute of Limitations for the 2017 Article Expired on June 8, 2019.**

Plaintiffs suggest to the Court, and in their complaint, that the 2017 Article was republished by every third-party comment.  Courts have repeatedly cautioned that "republication" should be interpreted narrowly to avoid the chilling effect for new material on a website.  Firth v. New York, 775 N.E. 2d 463, 467 (N.Y. 2002) (explaining any modification of a website to trigger republication chills publishers from posting on a website); Yeager v. Bowlin, 693 F.3d 1076, 1082-83 (9th Cir. 2012) (noting allowing for a republication whenever new material is added to the website encourages sites to be frozen in anticipation of and during lengthy litigation).

*1) Plaintiffs have not established relief under the holding in Larue v. Brown.*

Plaintiffs ask this Court to deem the 2017 Article republished based on Larue v. Brown, 333 P.3d 767 (Ariz. Ct. App. 2014).  See Pltfs.' Op. pp. 6-7.  In Larue v. Brown, defendants posted a series of messages on ripoffreport.com that accused an individual of a serious crime.  Id.

---

[1] Although matters outside of the pleadings are disfavored in a Rule 12(B)(6) motion, an exception to the rule is provided for pre-suit notice.  See Mot. p. 5, ¶3.  As such, Defendants request this Court consider Exhibit 1 under this exception and as evidence that sufficient pre-suit notice was, in fact, never waived.

3

at 769.  Defendants subsequently authored, under their names, statements that added to, revised and substantially modified the alleged defamatory material.  Id. at 770, 773.  They also made changes to the website and linked to other websites in their subsequent statements.  Id. at 773.

In this case, Plaintiffs' own Complaint alleges both that Mr. Moore authored third-party comments to his blog, and that he did **not** author third party comments in his blog—for the very same statements.  See, e.g., SAC ¶¶ 183, 184, 188, 189.  At the very least, Plaintiffs, after three complaints, have still failed to plausibly state that Mr. Moore authored any of the third-party content, which is in violation of Rule 12(b)(6) standards.  See Myeress v. Marmont Hill, Inc., Case No: 2:18-cv-438-FtM, at *3-4 (M.D. Fla. Oct. 25, 2018) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A district court should dismiss a claim that does not plead facts that make a claim facially plausible, and it requires more than a "sheer possibility."  Id.  In addition, this is also a violation of Rule 8(a) standards as to pleading defamatory statements with particularity.  See Mot. at p. 11. Therefore, Plaintiffs in this case have not even plausibly pled Mr. Moore authored the third-party comments, unlike in Larue.

Also, there are no allegations that Mr. Moore directed his statements to a different audience or linked to other websites.  In addition, Plaintiffs have not 1) identified a defamatory statement, that 2) Mr. Moore subsequently commented upon.  The only comments Mr. Moore posted were never pled with specificity under Rule 8(a) standards.  See Mot. at p. 11.  More so, the evidence before this Court attached as Exhibit 1 to the Arani Declaration (D.E. 49-1) shows Mr. Moore authored two comments, both regarding Plaintiffs' advocacy for murder.  Id. at pp. 8, 13 by "Emmett Moore".  Plaintiffs initially pled that the 2017 Article defamatorily stated Mr. Buckley advocated for murdering journalists, but that allegation is no longer part of the operating complaint.  See gen. SAC v. First Amended Complaint at ¶130.

Therefore, Larue v. Brown is not helpful to Plaintiffs because 1) there are insufficient allegations of fact under 12(b)(6) standards that Mr. Moore authored any third-party comments, 2) there are no allegations that Mr. Moore re-directed his blog to a new audience, and 3) because the only existing comments Mr. Moore did author or publish are no longer complained of as defamatory in the 2017 Article, nor are they sufficiently pled under Rule 8(a).

> 2. *A Finding for Plaintiffs on Republication in this Case would Have Significant and Devastating Implications for Defamation Actions and CDA Section 230.*

Plaintiffs' argument that a party can accuse, without any evidence to support the contention, that an author published third-party comments under a pseudonym would eviscerate the Single Publication Rule and Section 230 of the Communications Decency Act.

For example, a Plaintiff would only need to simply accuse an author or artist of authoring a third-party comment on a "hunch" in any social media platform that permits third-party comments, such as Facebook, Instagram, Yelp, TikTok, YouTube, or The New York Times online edition, etc.  All a plaintiff would have to do is find a comment in the comment section, and 5, 10, 20 years later, a defendant would be subjected to a lawsuit based on a "republication" argument or theory.  Witnesses and documentary evidence would be undermined or completely lost over the passage of time.  The ruling that Plaintiffs promote would lead to aggressive filings in Florida on less than suspicion, and would lead to inconsistent rulings.  A duplicitous plaintiff could also "plant" a fake comment in order to revive the statute of limitations in order to "lawfully extort" a defendant after the statute of limitations had elapsed.

Furthermore, anonymous speech would be undermined because defendants like Mr. Moore would be forced to prove they did not author the third-party comments, thereby chilling speech.  Another chilling effect on freedom of speech would be that artists, authors and publishers would not want people to comment on their speech or work out of fear that they will

be wrongfully accused in a lawsuit that they published third-party comments.  Lastly, the CDA Section 230 (discussed *infra*) would be meaningless because any online platform with a comment section would need to prove, in a meritless lawsuit, that it actually was a third-party who authored the comments.  Plaintiffs essentially desire that this Court and the State of Florida obliterate Section 230 of the CDA and the Single Publication Rule because Plaintiffs cannot plausibly plead facts establishing republication for a three-year-old article.

       3.  *This Court Should Maintain the Single Publication Rule in this Case.*

In a case such as this, where there are inconsistent facts regarding authorship and publication, the Court should adhere to the single publication rule, whereby each comment has its own two-year statute of limitations.  This is what the Court in Penrose Hill, Ltd. v. Mabray did when confronted with an online blog that was outside the statute of limitations for defamation.  Case No. 20-cv-01169-DMR, at * 9  (N.D. Cal. Aug. 18, 2020).  Plaintiff in that case claimed the entire blog article was republished when defendant "tweeted" a link to the blog article, which also included an alleged defamatory statement.  Id. The court considered Larue v. Brown and found the relevant consideration for republication was whether a link to the old blog article presented the blog to a new audience, and whether the material itself was defamatory.  Id. at *11-12, and n. 7 (citing Salyer v. S. Poverty Law Ctr., Inc., 701 F. Supp. 2d 912, 916 (W.D. Ky. 2009).  The Court ultimately held there was an alleged defamatory statement in the Tweet, but that it did not republish the original blog article.  Id. at *13.

Here, Plaintiffs have not alleged that any third-party comment was revealed to a new audience.  Plaintiffs admit that the comments appeared in the blog's comment section.  See Pltfs.' Op. at p. 6, ¶ 4.  Plaintiffs do not allege that Mr. Moore changed the URL of his blog's website, nor do they allege that he changed the content of the 2017 Article either.  Plaintiffs must

6

first be able to demonstrate that any of the comments were defamatory and substantially related to the 2017 Article.  They cannot.  See Mot. pp. 7-11.  Given the facts of this case, the Court should therefore limit consideration of third-party comments to the single publication rule, or two years after each comment's publication.

### C. Defendants Are Entitled to CDA Section 230 Immunity Because Defendants are Providers of an Interactive Computer Service and Because Plaintiffs Have Not Plausibly Pled They are Not.

Defendants put forth persuasive evidence in their motion based on the SAC that Defendants operate a website that allows third-party comment.  In their opposition, Plaintiffs do not refute the argument that Mr. Moore is an operator of an interactive computer service or provider.  See Pltfs.' Op. at p. 11, ¶¶ 1-2.  The Communications Decency Act, Section 230, is a bar to actions for third-party content, and cannot be overtaken by mere suspicion, without any factual basis, that a provider of an interactive computer service authored comments.

Plaintiffs cannot overcome Defendants' immunity under the act because Plaintiffs have not plausibly pled that Mr. Moore wrote the comments.  In particular, Plaintiffs submit in their complaint and argument the factual allegation that Mr. Moore submitted third-party comments and that Mr. Moore did not submit those same third-party comments.  See e.g. SAC ¶¶ 183, 184, 188, 189; Pltfs.' Op at pg. 11, ¶¶1-2.

The standard of review for a 12(b)(6) motion does not permit all pleadings adorned with facts to survive.  See Myeress, Case No: 2:18-cv-438-FtM, at *3-4.  As such, Defendants are immune under Section 230 of the CDA for the reasons set forth in their Motion.[2]

---

[2] Plaintiffs' reliance on Whitney Info. Network, Inc. v. Xcentric Ventrures, Ltd. Liab. Co., 199 F. App'x 738, 739 (11th Cir. 2006) (unpublished) is misguided as defendants in that case did perform some addition to and editing of third-party comments, whereas here, Plaintiffs admit in their complaint that Mr. Moore did not perform any changes to third-party comments.  See, e.g., SAC at ¶¶184, 189.

Should this Court permit, limited discovery should take place, similar to jurisdictional discovery in 12(b)(2) motions, on the identity of the third-party commentors, as Defendants have robustly provided identification details for third-party comments; yet Plaintiffs' frivolous arguments regarding the true identity of the authors persist in their opposition.[3]  Limited discovery would expeditiously resolve this issue, and it also relates to Plaintiffs' overbroad republication argument, argued *supra* Sec. I(B).

### D.  Plaintiffs' claim for Violation of FDUPTA Fails because Plaintiffs Failed to Plead Defendants violated FDUPTA Within the Territorial Boundaries of Florida, Failed to Plead Actual Damages and Failed to Allege a "Consumer Injury."

Plaintiffs cannot overcome Defendants' argument that in diversity cases, the alleged wrongdoing in a FDUPTA claim must occur within the territorial boundaries of the State of Florida.  Defendants cite to Five for Entm't S.A. v. Rodriguez, to support their contention that for several years, case law demands that FDUPTA violations must occur in Florida.  See Mot. at pp. 13-14; 877 F. Supp. 2d 1321, 1330-1331 (S.D. Fla. 2012).  Plaintiffs instead want this Court to rely on a case regarding personal jurisdiction in order to side-step the territorial jurisdiction requirement. Pltfs.' Op. at p. 14. Because Five for Entm't S.A. was a case based on diversity jurisdiction in this District, the Court in that case would have applied personal jurisdiction and due process arguments, if that were the applicable standard.  The Court did not apply personal jurisdiction standards in the case, and specifically granted leave for plaintiffs to amend their complaint to show the conduct at issue occurred in Florida.  Five for Entm't S.A.,  877 F. Supp. 2d at 1330-1331. Because Plaintiffs have not pled actions or violations occurred within this state's borders, their FDUPTA claim must be dismissed.

---

[3] In fact, the Court in Whitney Info. Network, Inc., 199 Fed. Appx 738 (2006) had the benefit of limited discovery because the case involved both a challenge to personal jurisdiction and a challenge to Section 230 of the CDA, and the Court considered affirmative evidence in its ruling on whether CDA immunity "remained in question." Id. at 744.

Defendants' Motion relies upon the holding of this District in <u>Midway Labs U.S., LLC v. S. Serv. Trading</u>, Case No. 19-24857-civ-Goodman, 2020 WL 2494608 (S.D. Fla May 14, 2020), to argue that Plaintiffs have not pled actual damages, specifically with respect to lost or diverted sales. Plaintiffs' Opposition then cites to one or more cases in their brief that this District specifically disagreed with when it determined that past lost profits are "no less consequential merely because it is a past profit." <u>Id.</u> at *16-17. Therefore, Defendants argue past lost profits or diverted sales are not actual damages under FDUPTA.[4]

As for Defendants' argument that no consumer injury has occurred, Plaintiffs fail to overcome their own pleading statement that "Mr. Moore demanded that Mr. Buckley pay Mr. Moore $1,800.00 in exchange for **not** writing the article about Top Gun Options." SAC at ¶72 (emphasis in the original). Although the allegation is entirely false, on its face though, it is still just an offer to not engage in a consumer transaction. Plaintiffs must show that he or she is a person who engaged in the purchase of goods or services. <u>See</u> <u>Midway Labs U.S.</u> 2020 WL 2494608 at *4; Mot. p. 16. Plaintiffs' desire to repeat these false and very vague allegations in their complaint and pleadings do not rehabilitate the fact that there is no consumer injury on the facts alleged. <u>See</u> Pltfs.' Op. p. 12, ¶ 2. Therefore, Plaintiffs' FDUPTA violation fails for lack of a discernable consumer injury.

### E. Plaintiffs' Derivative Claims Fail because of Florida's "Single Action Rule."

Plaintiffs' causes of action for trade libel, interference with prospective economic advantage and violation of FDUPTA cannot be maintained because they arise from the same publication of the alleged defamatory 2017 Article. Mot. at p. 17. Plaintiffs' Opposition states

---

[4] Plaintiffs fail to challenge that their reputational services were, in fact, legal services and therefore not actual damages under FDUPTA. <u>See</u> Pltfs.' Op. at p. 12. Defendants rely on their moving papers for the argument that 1) legal services are not actual damages and 2) loss to reputation is not a recoverable, actual damage. Mot. p. 15, ¶¶ 2-3.

for the first time that the fact that Mr. Moore also writes positive reviews in a capitalist and free market society is a harm that can be claimed by Plaintiffs. Id. at p. 15.⁵ For the reasons set forth in Defendants' Motion, each and every derivative cause of action is an attempt by Plaintiffs to compensate for the same facts and harm as the alleged 2017 Article, and therefore all claims fail under Florida's single action rule.

### F. This Court Should Apply Florida's Anti-SLAPP Statute.

Defendants squarely place the 2017 Article into the purview of Florida's anti-SLAPP statute (Fla. Stat. Sec. 768.295 *et seq*.) when they argue Plaintiffs' complaint admits the article was about an issue of public interest in a public forum. Mot. at p. 19. In addition, the federal court in Bongino,⁶ dismissed plaintiff's complaint on a motion to dismiss for lacking merit, and the court in Boling v. WFTV, LLC, did the same. 2018 Fla. Cir. LEXIS 1860 (Fla. Orange County Ct. Feb. 28 2018) (finding the case without merit for failure to adhere to the Section 770.01 pre-suit notice requirement); see also Parekh v. CBS. Corp., 820 Fed. Appx. 827, 836 (11th Cir. 2020) (unpublished). The very purpose of an anti-SLAPP statute is to dismiss, early in litigation, complaints with unmeritorious allegations that attack First Amendment liberties. Therefore, Defendants' anti-SLAPP argument is both timely and necessary.

### III. CONCLUSION

For the reasons set forth in its moving papers and herein, Defendants respectfully request this Court grant its motion to dismiss under Rule 12(b)(6).

Respectfully submitted,

---

⁵ Plaintiffs ignore Defendants' argument that the motivations of a publisher, whether fair or unfair, are protected First Amendment activities, and that the prohibition of FDUPTA actions against speech that publishes information also prohibit Plaintiffs' derivative claims. Mot. at p. 18. (Citing Miami Herald Publ'g Co. v. Tornillo, 418 U.S. 241, 258 (1974) and Bongino v. The Daily Beast Co., LLC, Case No. 19-cv-14472, WL 6470639 (S.D. Fla. Aug. 6, 2020).
⁶ See Bongino, Case No. 19-cv-14472, WL 6470639 at *1, 14-15.

**Deanna K. Shullman**

Deanna Shullman, Esq.
Florida Bar No. 0514462
dshullman@shullmanfugate.com
Shullman Fugate PLLC
2101 Vista Parkway
Suite 4006
West Palm Beach, FL  33411
Tel.: (844) 554-1354

**Susanne Arani**

Susanne Arani, Esq.
*Admitted Pro Hac Vice*
California Bar No. 238891
susarani@gmail.com
1028 Rosario Lane
Vista, California  92084
Tel.: (760) 331-8426

*Attorneys for Defendants Emmett Moore & Tradingschools.org*