# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No.: 0:20-cv-61023-RUIZ/Strauss

EDWARD MATTHEW
BUCKLEY and TOP GUN
OPTIONS, LLC,
      Plaintiffs,

v.

EMMETT MOORE and
TRADINGSCHOOLS.ORG,
      Defendants.

_____/

EMMETT MOORE
      Counterclaim-Plaintiff,

v.

EDWARD MATTHEW
BUCKLEY, SUSAN BUCKLEY,
and TOP GUN OPTIONS, LLC,
      Counterclaim-Defendants.

_____/

## DEFENDANT AND COUNTERCLAIM-PLAINTIFF EMMETT MOORE'S COUNTERCLAIM

Defendant/Counterclaim-Plaintiff Emmett Moore brings the following counterclaim against Plaintiff/Counterclaim-Defendant Edward Buckley (an individual), Counterclaim-Defendant Susan Buckley (an individual), and Plaintiff/Counterclaim-Defendant Top Gun Options, LLC (a limited liability corporation) (hereinafter collectively as "Counterclaim-Defendants") in relation to the Third Amended Complaint filed on August 9, 2021 [D.E. 96], and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action against Counterclaim-Defendants for violation of Florida's

Deceptive and Unfair Trade Practices Act ("FDUTPA").  By this action, Counterclaim-Plaintiff

seeks actual damages, injunctive relief, attorneys' fees, and all other relief to which

Counterclaim-Plaintiff may be entitled.

## THE PARTIES

2.      Counterclaim-Plaintiff Emmett Moore ("Mr. Moore") is a citizen of the state of

California, County of San Diego.  Mr. Moore operates a website known as Tradingschools.org.

3.      Counterclaim-Defendant Edward Buckley (a/k/a Matthew Buckley) is a manager

of, and on information and belief, the CEO of Top Gun Options, LLC.  Edward Buckley is a

citizen of the State of Florida, Palm Beach County, which is within this Court's District.

4.      Counterclaim-Defendant Susan Buckley is a manager and director of Top Gun

Options, LLC, and serves as a 50% owner of Top Gun Options LLC's parent company, Strike

Fighter Financial, LLC.  Counterclaim-Defendant Susan Buckley is a citizen of the State of

Florida, Palm Beach County, which is within this Court's District.

5.      Counterclaim-Defendant Top Gun Options, LLC, is a Florida limited liability

corporation with its principal place of business in Palm Beach County, which is in this Court's

District.

6.      All Counterclaim-Defendants transact the vast majority of their business that give

rise to this counterclaim, in the State of Florida.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of Counterclaim-Plaintiff's

claims pursuant to 28 U.S.C. § 1332, as the Counterclaim-Plaintiff on the one hand, and the

Counterclaim-Defendants on the other hand are citizens of different states, and the amount in controversy exceeds $75,000, as is defined by case law on FDUTPA claims.  In addition, this Court has jurisdiction under 28 U.S.C. Sec. 2201 for claims arising under the Declaratory Judgment Act.

8.      The Court may exercise personal jurisdiction over Counterclaim-Defendants Edward Buckley and Top Gun Options, LLC, as they have consented to this Court's personal jurisdiction by way of their complaint, and citizenship.

9.      The Court may exercise personal jurisdiction over Counterclaim-Defendant Susan Buckley as she is a citizen of the State of Florida, Palm Beach County, and her actions subject to this Counterclaim were conducted in this Court's District.

10.     As such, venue is proper under 28 U.S.C. Sec. 1391.

## FACTUAL ALLEGATIONS

**A. Counterclaim-Plaintiff, Mr. Moore's, Background**

11.     Mr. Moore has operated the website known as tradingschools.org since approximately 2014, where he authors and publishes content for the public's consumption regarding investment services, investment fraud, investment or financial software, and particularly about educational services that are provided by various individuals and vendors.

12.     Since the creation of the website tradingschools.org, Mr. Moore has authored hundreds of articles.

13.     Mr. Moore's website contains unbiased, informational articles regarding trading and investment products and services.

14.     With respect to educational materials provided by trading vendors, Mr. Moore generally will not publish a positive review unless the trading vendor can show at least 12

months of consistent brokerage statements that demonstrate his or her ability to actually trade in the live market.

15.    The importance of actual trading is simple:  many self-proclaimed successful trading educators only use simulated trading.  Simulated trading, otherwise known as "paper trading" or "fake trading" does not use real currency.  Some brokerage accounts will provide an applicant with a fake trading account so that they can practice trading on a simulated market account before taking any risk with real money.

16.    Using fake trading not only has zero risk to the trader using such a system, but on information and belief, some of the brokerage accounts, like the one used by Counterclaim-Defendants, do not keep a paper trail or any record of the gains or losses from use of the simulator.

17.    In other words, a person can dump as much fake money into or out of a simulated account with no record of them doing so.  This tactic is used to deceptively "puff" up a balance, but also to hide significant losses and emphasize winning trades, in the absence of proof or a record from the brokerage company.

18.    As a general matter, Mr. Moore will ask for verified brokerage statements or tax returns of an investment educator prior to publishing an article, in order to verify that the trading educator earns profit trading in the live market.

19.    In addition, Mr. Moore frequently works with law enforcement and regulatory agencies, such as the Commodity Futures Trading Commission ("CFTC"), the Federal Trade Commission ("FTC"), the United States Securities and Exchange Commission ("SEC"), and the Federal Bureau of Investigation ("FBI"), with respect to certain individuals and companies engaging in violation of securities laws, and investment fraud.

20.     Mr. Moore's work is not without risk—Mr. Moore has been threatened with, and has defended lawsuits in the past that attack his First Amendment Rights as a publisher of newsworthy matters of the public interest—specifically frauds and scams in the trading industry.

21.     For example, Mr. Moore was once the target of a "murder for hire" crime that was thwarted by law enforcement.  The motivation of the alleged crime was because Mr. Moore exposed the fraudulent activities of an unlicensed and unregistered investment advisor.

22.     Mr. Moore has also been an eligible recipient of numerous whistleblower actions regarding violations of the Commodity Exchange Act.

23.     Somewhat recently, Mr. Moore provided key evidence that the FTC used to seize the company assets of a company named "RagingBull," which purportedly scammed consumers out of approximately $137 million dollars in an investment education scheme.

24.     Mr. Moore provided key evidence to the CFTC in their prosecution of another investment education scheme named "School of Trade" which resulted in a 4.9 million dollar restitution order.

25.     Mr. Moore provided key evidence to the FBI in their apprehension of "Michael Salerno," an individual running $76 million-dollar investment fraud and is now facing multiple charges of securities fraud and significant time in federal prison.

26.     In the past six years, Mr. Moore has assisted law enforcement and regulatory agencies in dozens of investment fraud schemes resulting in numerous convictions, restitution orders, and/or industry banishment.

27.     Mr. Moore authors neutral or negative reviews when he discovers potentially fraudulent or misleading activity for an individual or entity in the trading services industry.

28.     At times, Mr. Moore will change his review in a more positive light if the subject

of his article provides documentation of actual trades for a year, or otherwise is open and transparent with Mr. Moore about his/her trading practices.

29.     At other times, Mr. Moore will change a review to reflect a more negative aspect, such as what happens when a regulatory body like the CFTC or FTC takes enforcement action against the subject of his article, after an article has been published.

30.     Aside from advertising on tradingschools.org, Mr. Moore discloses "affiliates" that he has reviewed and written positively about.  These affiliates have produced actual, live brokerage statements to Mr. Moore to prove that the trader was actually trading for at least one year.  The existence of the affiliate relationship is clearly disclosed, and their trading results are discussed within the article.

31.     Mr. Moore does not charge companies or individuals for writing positive material, nor does he ask for or receive payment for not writing material.

32.     Mr. Moore wrote a truthful and informative article about Counterclaim-Defendants Edward Buckley and Top Gun Options, LLC in June of 2017, entitled "Top Gun Options:  Paper Tiger?" The article primarily addressed the lack of trading history, even after written request, for Top Gun Options, LLC and Edward Buckley.

33.     Approximately three years later, Counterclaim-Defendants filed suit in the Southern District of Florida for counts including defamation and violation of FDUTPA.

34.     In order to make an end-run around Mr. Moore's First Amendment protections, Counterclaim-Defendants included a false and outrageous allegation that Mr. Moore called Edward Buckley on his personal cellphone to demand money in exchange for not writing a review.

35.     Subsequently, on or about July 26, 2021, Mr. Moore published a second article

regarding Counterclaim-Defendants, entitled "Top Gun Options, 2021 Review," that again focused on the lack of brokerage statements proving that the Counterclaim-Defendants actually traded, along with public records indicating Mr. Buckley's lack of financial stability, his past frivolous lawsuit, and arrest for a DUI that also included Mr. Buckley's attempt to arguably bribe the arresting officer with statements that he would no longer donate large sums of money if charges were sought against him, and claiming to be with the Broward's Sheriff's Department with a fake badge, all while accusing the arresting officer of being the real criminal approximately two dozen times. (See https://www.tradingschools.org/top-gun-options-2021-review/ and at Document B, page four, and embedded video of Mr. Buckley's arrest).

**B. Background on Counterclaim-Defendant Top Gun Options, LLC**

36.     Counterclaim-Defendant Top Gun Options, LLC was incorporated around 2011 in the State of Florida.

37.     Top Gun Options, LLC, markets its educational services on the internet to a worldwide population.  Top Gun Options, LLC, advertises, markets, distributes, promotes, and sells programs for profit on trading and investing via social media, their website, YouTube, live seminars, their public relations manager, word of mouth, trustpilot.com, Twitter (before being banned), emails, trading alerts, affiliate marketing, and other means that may be discovered during the course of litigation.  In addition, Counterclaim-Defendants have given interviews for outside media about their alleged successful trading.

*38.*     To entice consumers to purchase investment education services, Counterclaim-Defendants make false or unsubstantiated earnings claims throughout the sales process, as is described more fully *infra.*

39.     As a general matter, Counterclaim-Defendants represent, explicitly or implicitly,

that anyone, regardless of skill level or experience can learn Counterclaim-Defendant Top Gun Options, LLC's strategy to profit, that it is accessible to all, and that attaining proficiency in trading does not require any special aptitude or faculty.

40.     Counterclaim-Defendants make these representations while they themselves have either 1) not traded in the actual market from calendar years 2016-2020, or 2) when trading, have suffered significant and demonstrable loss in live trading.

41.     Top Gun Options, LLC, solicits individuals to subscribe to its services with monthly, annual, lifetime or promotional subscriptions based on its fake trading results.

42.     Most subscriptions to Top Gun Options, LLC range from approximately $2,000.00 annually up to approximately $9,000.00 annually, depending on promotions, for calendar years 2016 through 2020.

43.     Top Gun Options, LLCs targets seniors or those close to retirement, with what is called "Accelerated Retirement."  This program is on information and belief, the most expensive subscription to purchase, with an asking price of $8,995.00 from years 2016 to at least 2020.

44.     Top Gun Options, LLC sells a subscription service that gives "urgent alerts," which are believed to be Counterclaim-Defendant's stock picks on a weekly basis.  However, because none of the Counterclaim-Defendants are believed to have actually traded during calendar years 2015, 2016, 2018, or 2019[1], these are predominantly, if not all, fake trades with no risk to Counterclaim-Defendants, as opposed to their subscribers who are risking their real

---

[1] On information and belief, Counterclaim-Defendants engaged in minimal trading in calendar year 2017, with a resulting year-end loss.  This live trading is believed to be directly in response to Mr. Moore's first article from June of 2017.  Similarly, on information and belief, Counterclaim-Defendants began trading again a week prior to filing their complaint in May of 2020--again as a reaction to Mr. Moore's successful article and again at a loss to Counterclaim-Defendants the approximate amount of over $200,000.00 by the end of 2020.

money on the live market.

45.    In addition, Top Gun Options, LLC offers one-on-one coaching for "personal financial strategic planning session(s)" at approximately $7,995 a year.  All sessions are allegedly recorded as well.

**C. Background on Counterclaim-Defendant Mr. Edward Buckley**

46.    Counterclaim-Defendant Mr. Buckley served in active duty for approximately a decade in the U.S. Navy from the early 1990s, until approximately November 2000.  Although Mr. Buckley served active duty during peace time, he used to describe his missions as mere "patrols" over southern Iraq (sometimes referred to correctly or incorrectly as the "No Fly Zone").

47.    Frequently, Mr. Buckley now states he flew "Forty-Four Combat Missions" over Iraq in promotional materials.

48.    Mr. Buckley began referring to himself as a "financial consultant" beginning in early 2011.  Prior to that date, Mr. Buckley's only known options trading experience began in or around 1995 when he traded on behalf of his wife, Counterclaim-Defendant Susan Buckley, while on active duty in the U.S. Navy.

49.    Mr. Buckley has testified under oath that he essentially experienced losses, and no income from his trading during the 1990's.

50.    Since then, Mr. Buckley has marketed himself and Top Gun Options, LLC as a "financial service."

51.    Mr. Buckley has no known educational credentials or licensing credentials that support a contention that he is a successful, experienced, or knowledgeable options trader.

52.    Mr. Buckley is not believed to be licensed by FINRA (the Financial Industry

Regulatory Authority) or the SEC as a financial advisor or asset manager.  In addition, Mr.

Buckley and Top Gun Options, LLC are not registered with Florida's Office of Financial

Regulation as managers of securities or associated persons for securities management.

53.     On information and belief, Mr. Buckley and/or Top Gun Options, has been

operating several brokerage accounts for individuals, either "on the side" or through his "one-on-

one" private coaching subscriptions.  Said operation and management of brokerage accounts on

behalf of individuals is believed to be illegal pursuant to the Investment Advisors Act of 1940

and Florida Statute Sec. 517.021 *et seq.*

54.     For example, the following screenshot image taken from 2021 depicts some of the

many account logins Counterclaim-Defendants have access to with E*Trade Financial.



55.     In addition, Counterclaim-Defendants' theory of trading and teaching is based upon objectively extremist views.  For example, Mr. Buckley has made threats to burn his passport and leave the country if Joe Biden were to be elected, called Chief Justice Roberts a domestic enemy, advocated for the murder of journalists or those in the White House Press Corp, appealed for a U.S. civil war, referring to the Covid-19 pandemic as a "plandemic," among other arguably atrocious statements.

56.     It is alleged herein that no known trading professionals rely on extremist views or violent views of political occurrences to predict the market, unlike Mr. Buckley.  It is alleged herein that Top Gun Options, LLC, under the leadership of Mr. Buckley is more akin to a cult of disreputable belief systems, than actual trading recommendations based upon objective market factors.

**D. Background on Counterclaim-Defendant Susan Buckley**

57.     Counterclaim-Defendant Susan Buckley is, on information and belief, a co-manager of Top Gun Options, LLC, according to a May 2021 filing with the Florida Secretary of State.  Ms. Buckley is also believed to have been Mr. Buckley's spouse during the relevant time period of this counterclaim, or 2016 through 2020.

58.     From at least 2014 through 2016, Top Gun Options, LLC was a subsidiary of Strike Fighter Financial, LLC.  Susan Buckley, on information and belief, is a 50% owner of Strike Fighter Financial, LLC, according to IRS tax returns.

59.     Subsequent to 2016, it is believed that all gross revenue from Top Gun Options, LLC is transferred to Strike Fighter Financial, LLC.   As such, Susan Buckley is sued herein in her official capacity as to Top Gun Options, LLC.  Ms. Susan Buckley is also the vice president of Strike Fighter Financial, LLC.

60.     Counterclaim-Defendant Ms. Buckley also manages and promotes the Top Gun Options affiliate program where internet marketers are paid commissions to promote Top Gun Options, LLC's products and to promote its alleged investment performance via social media and mass emails.

61.     Ms. Susan Buckley is not believed to be licensed by FINRA (the Financial Industry Regulatory Authority) or the SEC as a financial advisor or asset manager.  In addition, Ms. Buckley is not, on information and belief, registered with Florida's Office of Financial Regulation as managers of securities or associated persons for securities management.

62.     Ms. Susan Buckley's relative(s) are believed and herein alleged to have filed incomplete or potentially untruthful tax returns for calendar years 2014-2016 for Top Gun Options, which resulted in unpaid tax liens for those years until December 2020.

63.     Said relatives have also been disclosed as quasi-experts in the underlying case against Mr. Moore, and share an office with Top Gun Options, LLC, according to the Florida Secretary of State, which further indicates and demonstrates the scams and wrongdoing alleged herein are believed to be part of a close-nit family operation between Counterclaim-Defendants and their relatives.

64.     On information and belief, Ms. Susan Buckley is responsible for the acts and omissions alleged herein as violations of FDUTPA given her capacity as a manager, owner, director, and vice president of Top Gun Options, LLC, and/or Strike Fighter Financial, LLC, specifically in her several roles of creating revenue and thereby is complicit in the violations of law alleged herein that amount to consumer fraud.

65.     Counterclaim-Defendants, have also consistently touted that they have connections to persons in high levels of our federal government, who provide Counterclaim-

Defendants with insider information of likely government actions.

66.     For example, in April of 2017, Mr. Buckley wrote to his private Top Gun Options members, "I'm keeping my powder dry for now.  I think there might be a short-term cruise missile strike…I'll know more after the meeting with the Chinese president.  I have a buddy who is a White House aid from the Pentagon, so he's tapped into a lot of this stuff.  Also a TGO member."

67.     As recently as May 17, 2021, Mr. Buckley stated, "This phone right here [Buckley's phone] is priceless.  I've got buddies in the Pentagon, I got buddies at the time who was [sic] at the White House…my network is ginormous.  I knew what the intelligence that he [Trump] was getting."

68.     To the extent Counterclaim-Defendants are receiving insider knowledge about U.S. or foreign intelligence matters, as Mr. Buckley clearly claims, and sharing this information for their and their subscriber's profit, then Counterclaim-Defendants are guilty of violating SEC regulations against insider trading. (See Dirks v. Securities & Exchange Commission, 463 U.S. 646 (1983)). It is alleged herein that other, criminal violations may also be at hand given these statements, which are not subject to this counterclaim. (See Espionage Act codified at 18 U.S.C. §§ 793, 798).

69.     To the extent government officials did not and have never provided Counterclaim-Defendants with non-public information for the use of trading or purchasing securities, then Counterclaim-Defendants are in violation of FDUTPA for explicit misrepresentations of fact, and fraudulent inducement in a money-making scheme by falsely claiming illegal insider information and access.

## COUNT I
### Violation of FDUTPA
### Florida Statute Sec. 501.202 *et seq.*
### As To All Counterclaim-Defendants

70.     Mr. Moore incorporates paragraphs 1 through 69 as though fully set forth herein.

71.     FDUTPA was created in part with the purpose to "[p]rotect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." See Fla. Stat. Sec. 501.202(2).

72.     FDUTPA even specifically defines violations to mean, " (a) Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S. C. ss. 41 *et seq*. (b) The standards of fairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts; or (c) Any law, statute, rule regulation, or ordinance which proscribes the unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices."

73.     In fact, FDUTPA has been referred to as Florida's "Little FTC Act" given the weight and deference the statute places on violations of FTC regulations.

**1. False and Deceptive Practices regarding Trading Profit from 2016-2020**

74.     From approximately 2016 until, on information and belief, present day, Counterclaim-Defendants have been falsely, deceptively and unfairly proclaiming their success as trading educators, investors, and financial service persons in the course of their business operations.

75.     For example, Counterclaim-Defendants proclaimed on a YouTube video on September 6, 2017, that their trading results for calendar year 2016 were as follows:



([https://www.youtube.com/watch?v=ME47h2pnivA&list=PLFuOfPJW97dbgR1o_em7hwBEpP](https://www.youtube.com/watch?v=ME47h2pnivA&list=PLFuOfPJW97dbgR1o_em7hwBEpP) [bomgtiA&index=512](https://www.youtube.com/watch?v=ME47h2pnivA&list=PLFuOfPJW97dbgR1o_em7hwBEpPbomgtiA&index=512), last accessed August 22, 2021).

76.     In addition, Counterclaim-Defendants stated that these alleged, enormous gains represented a 102% gain in profits for one portfolio, and 112% gain in another portfolio.

77.     On information and belief, Counterclaim-Defendants, never traded with real money in the live market for the entire calendar year of 2016.[2]  At no point have Counterclaim-Defendants disclosed to consumers the material fact that they never traded in the live market with real currency during 2016 in their website advertisements or disclaimers.

78.     In 2018, Counterclaim-Defendants claimed that their end-of-year results for

---

[2] When Counterclaim-Plaintiff Mr. Moore  pleads on "information and belief" as to Counterclaim-Defendants' actual trades in any calendar year in this counterclaim, he does so on the basis of reviewed brokerage statements and tax documents for Counterclaim-Defendants from E*Trade for calendar years 2015-2020, obtained via subpoena.

calendar year 2017 were as follows:



79.     Again, Counterclaim-Defendants proclaim to the public via their webpage that three portfolios earned $409,717.00 in actual monetary profit.

80.     On information and belief, Counterclaim-Defendants only began trading again in the live market <u>after</u> Mr. Moore published his first article in early June of 2017.

81.     On information and belief, Counterclaim-Defendants actual trading results were as follows for calendar year 2017:  Counterclaim-Defendant Mr. Buckley made a handful of trades for a year-end **loss** of approximately $750.00, and Counterclaim-Defendant Ms. Susan Buckley ended the year with a **loss** of approximately $200.00, with minimal live trading.

82.     Mr. Moore believes and thereon alleges herein that Counterclaim-Defendants have not shared with the public their losing trades in the live market, which is a material, and deceptive  omission.

83.     For calendar year 2018, Counterclaim-Defendants marketed their trading profits as follows on their website in 2019:



84.    On information and belief, Counterclaim-Defendants did not engage in any actual trading in the live market in 2018.  At no point have Counterclaim-Defendants disclosed the material fact that they never traded in the live market with real currency during 2018 in their website advertisements or disclaimers to their subscribers or to the public.

85.    For calendar year 2019, Mr. Moore does not have evidence of proclaimed success from Counterclaim-Defendants' marketing online at this time, however on information and belief, Counterclaim-Defendants claimed market success for that year.

86.    On information and belief, none of the Counterclaim-Defendants performed any actual trading in 2019 in the live market with real money.

87.    For calendar year 2020, Counterclaim-Defendants claimed the following with respect to their alleged, tremendous success:



88.    As such, Counterclaim-Defendants marketed their profits as **$1,867,400.00** in

portfolio gains from their <u>simulated</u> trading accounts.

89.     Counterclaim-Defendants claim that 2020 was their best year ever, publicly and in pleadings in the underlying case.

90.     Counterclaim-Defendants even made the following, outrageous claim in November of 2020:



91.     As shown above, Counterclaim-Defendants claim that all of their trades are real and documented.  On information and belief, they are not, and such claims are false, misleading and material misrepresentations of fact that are deceptive to the average consumer.

92.     In fact, on information and belief, Counterclaim-Defendants began actually trading again in the live market approximately a week before filing their frivolous complaint against Mr. Moore on or about May of 2020.

93.     However, on information and belief, Counterclaim-Defendants' true market results for calendar year 2020 were as follows:  Counterclaim-Defendant Mr. Buckley ended his 2020 year with a **loss** of approximately $140,000.00 and Counterclaim-Defendant Ms. Buckley

ended her year with an approximate $200,000.00 **loss**.

94.     In sum, from 2016 though the end of the year 2020, Counterclaim-Defendants have misled its customers, consumers, and the public at large with what is alleged to be material, false claims about their trading profits and trading ability, through deceptive and unfair trade practices alleged in this section.

95.     On information and belief, on the rare occasions that the Counterclaim-Defendants have traded, it has been at a loss and mostly a significant loss for calendar years 2015-2020.

96.     When consumers like Mr. Moore and others have asked for verified, live trading results, Counterclaim-Defendants have falsely claimed that providing actual brokerage statements would be a violation of law.

97.     Counterclaim-Defendants, specifically Mr. Buckley, have made this false claim to consumers because Counterclaim-Defendants either 1) had no real trades to show, but if they did, 2) they showed substantial and humiliating losses, especially for calendar year 2020.

98.     On information and belief, Counterclaim-Defendants' real trading record is so vastly worse than the advertising and marketing that they claim for fake trades because 1) Counterclaim-Defendants are depositing simulated money into their simulated accounts and hiding simulated losses, 2) Counterclaim-Defendants have several dozen simulated accounts and only show the ones that show wins, and/or 3) they are trading in hindsight as some of their statements suggest.

This is alleged to be a deceptive practice as well because Counterclaim-Defendants  claim consistent, unrealistic wins that on information and belief, cannot even be achieved by

professional, expert investors or hedge fund managers.[3]

### 2. Counterclaim-Defendants' Use of Testimonials

99.     Counterclaim-Defendants' earnings claims are false or unsubstantiated.  On

information and belief, Counterclaim-Defendants' strategy does not work as advertised, and the

Counterclaim-Defendants do not track the trading performance of their customers, and have no

data that would allow them to predict the performance of their customers.

100.    In fact, an alleged consumer by the name of "Joel Gilbert" from Facebook claims

that from February to March 11, 2020, he earned $260,000.00.

101.    However, Joel Gilbert's profile on Facebook is largely blank, with the exception

of liking Top Gun Options, LLC and a sports team.  Therefore, on information and belief,

testimonials like Joel Gilbert's that Counterclaim-Defendants post are believed to be fake and

false reviews.

102.    In another example, a customer by the name of "Ms. Tamara Post" has

proclaimed significant trading success with Counterclaim-Defendants' investment services (over

470% investment returns "in only a few days," in February of 2020).

103.    Counterclaim-Defendants also asked Ms. Post to provide "reputational repair"

work for them in the underlying action.  However, Ms. Post was not paid any money—rather,

she was given <u>free</u> services from Counterclaim-Defendant Ms. Susan Buckley shortly before

Plaintiffs filed their original complaint, but after retaining Charles Lee Mudd, Esq.

---

[3] For example, for calendar years 2016 through 2020, hedge funds saw an average of **6.55%** growth per calendar year.  <u>See</u> Mark J. Perry, "The SP 500 Index Out-Performed Hedge Funds Over the Last 10 Years.  And It Wasn't Even Close," The American Enterprise Institute (January 7, 2021), (https://www.aei.org/carpe-diem/the-sp-500-index-out-performed-hedge-funds-over-the-last-10-years-and-it-wasnt-even-close/).  Counterclaim-Defendants, however, claim they outperform hedge fund managers by **multiples of ten to forty times**, as outlined *supra*.

104.    The only known work that Ms. Post did was post a nasty, false and defamatory comment about Mr. Moore accusing him of being an extortionist on Mr. Moore's website years ago, and claiming she doubled her portfolio size with Counterclaim-Defendants.

105.    In addition, Ms. Post has no known reputational repair experience, and declared herself to be fully disabled and unable to work at all when she sued her insurance company in 2001.  See the complaint in Tamara Post v. National Life Insurance Co., Case No. 2:99:-cv-00613-PGC, D.E. 5, p. 2 (C.D. Utah, June 28, 2001).  To the extent she is now able to work, she didn't do so for money, but rather at the urging of providing false testimonials for Counterclaim-Defendants.

106.    Ms. Post's testimonials and conduct towards Counterclaim-Plaintiff Mr. Moore at the request of Plaintiffs are alleged herein to be false, deceptive, unfair and the pattern and practice of Counterclaim-Defendants with respect to testimonials and their affiliate program.

107.    Counterclaim-Defendants routinely boast of their alleged client testimonials, without stating a necessary disclaimer that any such results, if truthful, are not verified and not representative of the performance that reasonable consumers can expect to achieve. (See e.g. Exhibit A).

108.    Using false or fabricated results in a testimonial is also a violation of FTC rules and regulations pursuant to Section 5(a) of 15 U.S.C. Sec. 45(a).

**3.  Counterclaim-Defendants' False and Misleading Promises to Consumers**

109.    Adding to their deceptive and untruthful business practices, Counterclaim-Defendants have induced others to subscribe to their business by promising actual profits in the live market.

110.    For example, Counterclaim-Defendants routinely make statements to the public at

large that their program makes real people actual money in the live market, such as: "The fastest way to experience huge profit potential with options;" "Learn how YOU can trade weekly options for quick profits;" "[T]OPGUN Options members used their Full Throttle training to become millionaires;" and their subscribers are "making an average of $16,000.00 every month."

111.     Counterclaim-Defendants targets everyday Americans and the consuming public with statements like, "You make sure your kids have everything they need.  That their education is taken care of, **no matter what**.  You pay off their college tuition ahead of time, and set up the grandkids forever, and then you can retire on your own terms," (emphasis in the original), the full statement from the year 2020 is produced below:

### WHAT COULD YOU DO WITH 92% WINNING TRADES?

If you knew you were winning on 9 out of 10 trades, and that you were limiting your risk on the other 1...

**What would that mean to you? To your life?**

Would you get rid of your boss? Take that dream vacation you always imagined?

If you're like me, then you buy your wife the forever home she always wanted.

You make sure your kids have everything they need.

That their education is taken care of, **no matter what.**

You pay off their college tuition ahead of time, and set up the grandkids forever...

And then you can retire on your own terms...

**I want all of that for you.**

## GET THE GAINS. AVOID THE RISK.
## BECOME A TOP GUN TRADER.

(See https://go.topgunoptions.com/go, last accessed on August 21, 2021).[4]

---

[4] Between approximately August 18, 2021, and August 21, 2021, Counterclaim-Defendants substantially modified the webpage.

112.    As alleged above, Counterclaim-Defendants have not made profits from 2016 through 2020 in the live market, and have only suffered substantial investment losses when trading live with real money. As such, the advertisement of their money-making skills to the public are alleged to be deceptive, misleading and material misrepresentations of fact.

113.    In addition, Counterclaim-Defendant Mr. Buckley states on Top Gun Options, LLC's website that he has "30 years of successful trading."  This is a false allegation of fact, and is a misrepresentation of his abilities that is used to deceptively induce uninformed members of the public to pay for Counterclaim-Defendants' services.

114.    Counterclaim-Defendant Mr. Buckley has attempted to bolster the appearance of his wealth and power with public false statements about the worth and square footage of his home, happiness of his marriage, and with statements that he has "been God," and came back from "being God" while doing an (illegal) Class I controlled substance (Ibogaine) in a foreign country, and by having more guns than your "local RCM unit."

These statements are alleged herein to be typical of investment educators Mr. Moore reviews who portray themselves in the best, most powerful light possible in order to attract unwitting subscribers under false pretenses to subscribe to their services.

115.    In February of 2020, Counterclaim-Defendants Mr. Buckley and Top Gun Options, LLC, posted the following as to why the consuming public should listen to or pay money for their services:



(See https://www.youtube.com/watch?v=5tmN5oOVHNE, last accessed August 21, 2021)

116.    Again, Counterclaim-Defendants have never earned $4 million in profit from trading and any claims otherwise are deceptive and unfair practices used to lull reasonable consumers into spending thousands of dollars a year with a company whose managers traded at a loss for the relevant time period of 2016-2020.

117.    From 2016 through 2020 based on IRS tax returns, it is believed and therefore alleged herein that Counterclaim-Defendants have defrauded the consuming public out of over $3,000,000.00 dollars based on these material misrepresentations of their trading success and deceptive and unfair trade practices.

118.    Because Counterclaim-Defendants have been operating their business with these and other deceptive and unfair business practices since approximately 2011, it is alleged on information that a more accurate figure of the amount of profit from their wrongful conduct exceeds $6,000,000.00.

119.     As stated *supra* paragraphs 65 through 69, it is alleged that Counterclaim-Defendants promise access to insider or non-public information by means of communications with persons in high levels of our federal government.

120.     As such, Counterclaim-Defendants illegally market and promote their expertise on the basis of what would be considered a violation of SEC insider trading regulations.  It is further alleged based on case law that Counterclaim-Defendants are guilty of violating SEC insider trading regulations, which would be a violation of FDUTPA as well.

## 4.  Counterclaim-Defendants' Deceptive and Unfair Advertising Practices

121.     Under FTC guidelines and Section 5(a) of the FTC Act, 15 U.S.C. Sec. 45(a), an advertisement or marketing is deceptive when it contains statement-or omits information- that is likely to mislead consumers acting reasonably under the circumstances and is important to a consumer's decision to buy or use the product.  See FTC Policy Statement on Deception; *In re Cliffdale Associates , Inc* ., 103 F.T.C. 110, 165 (1984); *accord F.T.C. v. Verity Int'l Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006); *F.T.C. v. Cyberspace.Com LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006); *Federal Trade Commission v. Cantkier*, 767 F. Supp. 2d 147, 151-52 (D.D.C. 2011).

122.     Counterclaim-Defendants place a disclaimer at the bottom of their advertisement that appears as follows from years 2016 to 2020:

Top Gun Options LLC (c) 2018

Disclaimer: Top Gun Options LLC ("Company") is not an investment advisory service, nor a registered investment advisor or broker-dealer and does not purport to tell or suggest which securities or currencies customers should buy or sell for themselves. The independent contractors and employees or affiliates of Company may hold positions in the stocks, currencies or industries discussed here. You understand and acknowledge that there is a very high degree of risk involved in trading securities and/or currencies. The Company, the authors, the publisher, and all affiliates of Company assume no responsibility or liability for your trading and investment results. Factual statements on the Company's website, or in its publications, are made as of the date stated and are subject to change without notice. It should not be assumed that the methods, techniques, or indicators presented in these products will be profitable or that they will not result in losses. Past results of any individual trader or trading system published by Company are not indicative of future returns by that trader or system, and are not indicative of future returns which be realized by you. In addition, the indicators, strategies, columns, articles and all other features of Company's products (collectively, the "Information") are provided for informational and educational purposes only and should not be construed as investment advice. Examples presented on Company's website are for educational purposes only. Such set-ups are not solicitations of any order to buy or sell. Accordingly, you should not rely solely on the Information in making any investment. Rather, you should use the Information only as a starting point for doing additional independent research in order to allow you to form your own opinion regarding investments. You should always check with your licensed financial advisor and tax advisor to determine the suitability of any investment. Before placing any trade you should consult with a licensed broker or registered investment advisor as well as read The Characteristics and Risks of Standardized Options. Please remove all stock names and symbols from communications. HYPOTHETICAL OR SIMULATED PERFORMANCE RESULTS ("PAPER OR VIRTUALTRADING") IN THE MODEL PORTFOLIOS HAVE CERTAIN INHERENT LIMITATIONS. UNLIKE AN ACTUAL PERFORMANCE RECORD, SIMULATED RESULTS DO NOT REPRESENT ACTUAL TRADING AND MAY NOT BE IMPACTED BY BROKERAGE AND OTHER SLIPPAGE FEES. ALSO, SINCE THE TRADES HAVE NOT ACTUALLY BEEN EXECUTED WITH CAPITAL, THE RESULTS MAY HAVE UNDER- OR OVER-COMPENSATED FOR THE IMPACT, IF ANY, OF CERTAIN MARKET FACTORS, SUCH AS LACK OF LIQUIDITY. SIMULATED TRADING PROGRAMS IN GENERAL ARE ALSO SUBJECT TO THE FACT THAT THEY ARE DESIGNED WITH THE BENEFIT OF HINDSIGHT. NO REPRESENTATION IS BEING MADE THAT ANY ACCOUNT WILL OR IS LIKELY TO ACHIEVE PROFITS OR LOSSES SIMILAR TO THOSE SHOWN. Top Gun Options LLC, 434 NW 1st Ave., Ste 601 Ft. Lauderdale, FL 33301 Copyright © Top Gun Options LLC. 2016.CFTC RULE 4.41 -- HYPOTHETICAL OR SIMULATED PERFORMANCE RESULTS HAVE CERTAIN LIMITATIONS. UNLIKE AN ACTUAL PERFORMANCE RECORD, SIMULATED RESULTS DO NOT REPRESENT ACTUAL TRADING. ALSO, SINCE THE TRADES HAVE NOT BEEN EXECUTED, THE RESULTS MAY HAVE UNDER-OR-OVER COMPENSATED FOR THE IMPACT, IF ANY, OF CERTAIN MARKET FACTORS, SUCH AS LACK OF LIQUIDITY. SIMULATED TRADING PROGRAMS IN GENERAL ARE ALSO SUBJECT TO THE FACT THAT THEY ARE DESIGNED WITH THE BENEFIT OF HINDSIGHT. NO REPRESENTATION IS BEING MADE THAT ANY ACCOUNT WILL OR IS LIKELY TO ACHIEVE PROFIT OR LOSSES SIMILAR TO THOSE SHOWN.

5

123.    Counterclaim-Defendants deliberately violate FTC guidelines that require disclaimers to prevent deception, in that necessary disclaimers must be clearly and prominently placed.

124.    Counterclaim-Defendants fail to place their disclaimer prominently, it is not in close proximity to the trading results they claim to have, and the size, font, and color of the disclaimer renders it unreadable to someone with 20/20 vision.

125.    Furthermore, the disclaimer does not state 1) that Counterclaim-Defendants have only traded approximately eleven months from years 2015 through 2020, or that 2) when Counterclaim-Defendants have traded, it has been at a significant loss, based on actual trades. This lack of disclaimer is alleged herein to be a material omission that is deceptive and

---

[5] This capture was taken from an adobe document that was magnified at 100%, or the length and width of a standard letter that would result from printing the advertisement from Top Gun Options, LLC's website. Online version available at https://web.archive.org/web/20191216021430/go.topgunoptions.com/getft (last accessed August 22, 2021).

misleading to the reasonable consumer.

126.     Counterclaim-Defendants also fail to consistently post a necessary disclaimer about their paper or fake trades when marketing their alleged successes.  (See Exhibit A).

127.     This enriches Counterclaim-Defendants directly as any reasonable consumer would believe that they too can earn millions of dollars in a month (see image at paragraph 90), and therefore pay subscription fees to Counterclaim-Defendants.

128.     In addition, as stated *supra* paragraphs 51 through 54, Counterclaim-Defendants have for a period of time uncertain between 2016 and 2020, advertised one-on-one coaching to individuals in private sessions to advise them on their individualized investment goals and strategies.  (See Exhibit B, available at https://go.topgunoptions.com/club, last accessed on August 21, 2021).

129.     Such conduct is alleged herein to be a violation of the Investment Advisers Act of 1940, § 202(a)(11) and subdivision D of that section because Counterclaim-Defendants provide investment advice that is individualized, and specified to subscriber's needs, without Counterclaim-Defendants being registered investment advisors with FINRA or any governmental agency for licensing or registration.  See 15 U.S.C. Sec. 80(b); Lowe v. Securities & Exchange Commission, 472 U.S. 181 (1985).

130.     Mr. Moore is a "consumer" as defined by FDUTPA under Fla. Stat. Sec. 501.203.

131.     Mr. Moore's readers of his articles located at tradingschools.org are consumers as defined by Section 501.203.

132.     The general public at large (or those on the internet) are "consumers" as defined by Section 501.203.

133.     An entity does not have to be a consumer to bring a FDUTPA claim, but injury

must be alleged against or to consumers.  See Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc., 169 So. 164, 169 ( Fla. 4th DCA 2015).[6]

134.    Counterclaim-Defendants are engaged in commerce, as defined by FDUTPA, and their acts arise in the State of Florida.

135.    Counterclaim-Defendants' practices outlined *supra* are unfair in that they are unethical, unscrupulous and substantially injurious to consumers, as outlined in Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).

136.    Counterclaim-Defendants' practices outlined *supra* are deceptive because they are material misrepresentations, omissions and because Counterclaim-Defendants deliberately mislead consumers acting reasonably under the circumstances.  (See Zlotnick v. Premier Sales Grp., Inc., 480 F.3d 1281, 1284 (11th Cir. 2007).

137.    The deceptive, unfair and misleading practices and statements outlined *supra* for Count One have caused harm to Mr. Moore as his mission is to root out and uncover fraud in the trading education industry.

138.    Counterclaim-Defendants have intentionally misled Mr. Moore about their trading success. Mr. Moore was only able to recently verify the truth of Counterclaim-Defendants' actions, statements and deceptive and unfair trade practices, given Counterclaim-Defendants' trading records.

139.    As such, Counterclaim-Defendants' material misrepresentations, omissions, deceptive and unfair trade practices have harmed Mr. Moore from the benefit of conducting his work expeditiously and fully for the benefit of his readers, advertisers, affiliates and the public at

---

[6] This allegation is now the "law of the case."  See Order on Defendants' 12(b)(6) Motion, [D.E. 94], ordered on July 26, 2021, at p. 17.

large.

140.     Counterclaim-Defendants have also harmed Mr. Moore's readership base (consumers under FDUTPA) by falsely proclaiming to be successful traders with a "proven" track record.  Mr. Moore's readership base are susceptible to Counterclaim-Defendants' false claims, material omissions and misrepresentations. As such, his readership is therefore alleged to have been harmed as they reasonably rely on Counterclaim-Defendants' materially misleading statements and omissions in making trading education service decisions or subscriptions.

141.     Counterclaim-Defendants have also harmed Mr. Moore's affiliates with their unfair business practices, as Mr. Moore's affiliates have shown one year of actual trading results, whereas Counterclaim-Defendants mislead the public into thinking their results are real or verifiable, to which Mr. Moore alleges they are not, as advertised.

142.     As such, Counterclaim-Defendants' material misrepresentations and omissions drive business away from Mr. Moore's affiliates (also consumers under FDUTPA) who do not engage in deceptive or unfair practices, and towards vendors like Counterclaim-Defendants.

143.     Counterclaim-Defendants have falsely induced their own customer base into paying thousands of dollars for yearly subscriptions to a trading service offered by "traders" (Counterclaim-Defendants) who have not traded for substantial lengths of time, do not reveal the truth about their trading, and in fact lie about their successes, is alleged to manipulate fake trades and make promises of huge profits, in an amount over $3,000,000.00.

144.     Current, past, and future subscribers to Counterclaim-Defendants' services have suffered harm, and will continue to suffer harm unless and until corrective action in the form of injunctive relief is taken.

145.     Counterclaim-Defendants have and are continuing to mislead the public with their

intentional misrepresentations, unverified trading history, and their trading experience and profitability in order to obtain thousands of dollars from the general public as subscribers, and will continue to harm the public at large, unless and until the injunctive relief sought in this action is taken.

146.    The acts and omissions described in this Count constitute unfair methods of competition, unfair and/or deceptive practices in the conduct of commerce, and violative of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. Sec. 45(a).  See Fla Stat. Sec. 501.204.

147.    As a direct result of Counterclaim-Defendants statements, acts and practices described herein, Mr. Moore has expended money on corrective advertising, which constitutes actual damages under FDUTPA.

148.    As such, Mr. Moore makes a claim for damages permissible under FDUTPA, including attorneys' fees should he prevail on his causes of action under FDUTPA, in addition to injunctive relief, as outlined *infra* in Mr. Moore's prayer for damages.

## PRAYER FOR RELIEF

Defendant/Counterclaim-Plaintiff Mr. Moore prays for the following relief:

a)      An award of actual damages in the amount to be determined at trial in this case;

b)      An award of attorneys' fees and costs pursuant to Florida Statutes Sections 501.211 and 501.2105 in an amount to be determined;

c)      Injunctive relief in the form of an order(s) that instruct Counterclaim-Defendants as follows:

i.      To cease and desist any one-on-one advisement or instruction on

securities purchases, investments or trading, absent proper licensing or registration of any manager of Counterclaim-Defendant Top Gun Options, LLC;

ii.      To cease and desist the managing of any live brokerage accounts of any individual, absent proper licensing or registration of any manager of Counterclaim-Defendant Top Gun Options, LLC;

iii.      Disclaimers need to comply with FTC regulations and/or guidelines;

iv.      Removal of all webpages, videos, and marketing materials that lack compliant disclaimers (including those for false or unsubstantiated testimonials).  All materials to be removed under this section must be preserved for purposes of litigation or administrative enforcement actions from a U.S. or Floridia regulatory agency, prior to their removal;

v.      Removal of statements from all webpages, videos, and marketing materials that Counterclaim-Defendants Mr. Buckley and Top Gun Options have been "successful traders" for thirty years or twenty years. All materials to be removed under this section must be preserved for purposes of litigation or administrative enforcement actions from a U.S. or Floridia regulatory agency, prior to removal;

vi.      Notification to all past customers from 2016-2020 sufficient to identify years where no trading existed and when principals did trade during those years, it was at a loss, and to provide contact information for the FTC and SEC complaint webpages;

  vii. All incoming funds to Counterclaim-Defendants immediately be placed into a receivership overseen by this Court until said orders take effect;

  viii. Notification to all employees, agents, contractors, and PR/Advertising agencies of any order from this Court granting any of the injunctive relief ordered in this action.

 d) Any such other and further relief as this Court may deem just and proper.

Dated:  August 23, 2021  Respectfully Submitted,

   /s/ Matthew Fornaro

Matthew Fornaro, Esq.
Matthew Fornaro, P.A.
Florida Bar No.:  0650641
mfornaro@fornarolegal.com
11555 Heron Bay Blvd., Ste. 200
Coral Springs, FL 33076
Tel.: (924) 324-3651

   /s/Susanne  Arani

Susanne Arani, Esq.
Arani Law
*Admitted Pro Hac Vice*
California Bar No. 238891
susarani@gmail.com
1028 Rosario Lane
Vista, California  92084
Tel.: (760) 331-8426

*Attorneys for Defendants Emmett Moore &*
*Tradingschools.org*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2021, a true and correct copy of this document was electronically filed via CM/ECF system, which will send notice of the electronic filing to all counsel of record.

By: <u>/s/ Matthew Fornaro</u>
Matthew Fornaro

Exhibit A






FREE LIVE TRADING SESSION
Friday March 13th
11 AM EASTERN

## $2.1 M in Profit in ONE Month

## This IS the BIG ONE

*Fred Sanford use to claim every episode that*
*This is the BIG ONE!*
*At Top Gun Options we made a INDUSTRY*
*LEADING CALL that Covid19 would cause world*
*markets to implode and we've seen*
*7 FIGURES IN PROFIT YEAR TO DATE*



Grab a slot for this ONE TIME live trade brief
webinar and learn:

> **Learn how YOU can trade Weekly Options for quick profits**
Every Monday at 1 PM eastern Whiz knocks out the Weekly
Options Live Trade Brief

> **Discover what a 'TREDGE' is and how to profit on wide
market swings**
See a 'top secret' tactic that is both a trade designed to make
money while hedging your portfolio.

> **See Top Gun Options 7 Step Proprietary Trade Plan**
Whiz never took of on a combat mission, or placed a trade,
without knocking out his plan - learn the 7 steps you MUST
employ before getting airborne.



Top Gun Options' founder E. Matthew Buckley was
one of the *only* Wall Street professionals to predict a
Trump election and the market rally!

Discover the "Full Throttle" method for
CRUSHING hedge fund performance
**Friday, March 13th**
**11 AM ET**

Enter your info below. We'll sign you up and give you the
bonus goodies right away...

| First Name | First Name |
| Last Name | Last Name |
| Email * | Email * |
| Are there any symbols you wish Whiz to cover on the webinar? | Enter symbols you'd like Whiz to cover on the webinar |

**Save Your Seat Now**

**Enter the symbols you want Whiz to cover**
(time permitting)

As an additional gift you'll also receive a subscription to our
newsletter with exclusive offers, and helpful tips...



**Matthew "Whiz" Buckley**
**CEO, Top Gun Options**
**Managing Director of Strategy**



**U.S. Navy F/A-18 Hornet pilot**
**TOP GUN Graduate**
**44 Combat Sorties**

Top Gun Options portfolios profited
*Over 270% in TWO and a Half MONTHS!*
**A triple digit return on risk!**

## What other students are saying:

"I started at TGO 10 years ago with a small account, $1,500, and didn't know a thing about options. As of March 11th I am up over $800,000...thank you Whiz! You have changed my life!"

- **Ron L.**

"I would like to thank you Whiz, thanks to TGO and your mentoring, I have netted over 255K this month on limed risk. Thanks for all you do and your team..."

- **Jeff T.**

"Whiz - up $547K today - Added after you sent the alert."

- **Anne S.**

"Up $680,000 today, closing half as you covered."

- **Michael N.**

## Your Bonuses For Attending

### 7-Step Trade Plan
### (a $55 value!)



We will take you step by step through what you need to know to develop and implement your own trading plan, including:

**The 7 Steps To A Successful Trade Plan:**

* Identify the target
* Describe the commit criteria
* Strategic mindset
* Engineer the tactic
* State your tactical employment
* Midcourse guidance
* Exit plan

### Options Pocket Check
### List (a $45 value!)

Keep by your trading screen to help you analyze each trade before you send it to the market.

The **Options Pocket Checklist**, or **OPCL** for short, is a **must have** for every retail options trader.

Just as an aviator has checklists that they live by, so do Top Gun Options traders. The OPCL includes our proprietary planning guide and breaks down **over 35 tactics** into the critical information you need to win in the combat of options trading.

The tactics are broken down by skill level: Primary, Intermediate, and Advanced.

## Get Access To This Amazing Training for FREE!
(PLUS get the free tool we use to review every trade before we send it to the market.)

→ SECURE YOUR SEAT FOR THIS TRAINING NOW
PLUS, get the Options Pocket Check List just for registering!

Copyright © 2019 | Top Gun Options | All Rights Reserved.

Exhibit B



Commodore's Club
Coaching



# Commodore's Club Coaching
# $7995/Year

## Want To Take Your Options Training To The Next Level? Ready To Take Your Trading SUPERSONIC



**Introducing Top Gun Options Commodore's Club Coaching**

✔ Two 30-min 1-on-1 coaching sessions each month (or One 1-hour session)

✔ One hour personal financial strategic planning session where you and Whiz map out your annual financial objective(s), threats to success, available resources, lessons learned, your specific coaching/training action items, and a thorough contingency plan

✔ Work around your schedule (Whiz able to do weekend sessions - depending on schedule availability)

✔ Every session is on GoToTraining where you and Whiz interact (all sessions are recorded and sent to you)

Now it's time to take some profits as the market potentially rolls over...and to **invest in YOURSELF and improving your trading!**

## Learn From The Best, and You Will Achieve the Best!

**See what others are saying:**



📊 **Be More Profitable By Refining Your Trading Skills**

📈 **One-On-One coaching from Top Gun Options' founder, Matthew "Whiz" Buckley**

🏛 **The perfect follow up to Full Throttle training**

## DON'T MISS THIS CHANCE
### * LIMITED AVAILABILITY



Thanks

Matthew "Whiz" Buckley

**P.S.:** Hope to spend some time with you personally to develop your own strategic plan and refine your trading tactics and skills!

Copyright © 2014 The Daily Dynamic | All Rights Reserved